# No. 23-55483

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

L.A. TERMINALS, INC., AND SOCO WEST, INC.,

*Plaintiffs and Appellees*,

*vs.*

UNITED NATIONAL INSURANCE COMPANY,

*Defendant and Appellant.*

_____

On Appeal from a Summary Judgment of the District Court
Central District of California, Action No. 8:19-cv-00286-ODW-PVC
Honorable Otis D. Wright II
_____

## APPELLANT'S OPENING BRIEF
_____

JAMES C. NIELSEN
DANIEL N. KATIBAH
STUART E. JONES
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California  94903
(415) 693-0900
Facsimile (415) 693-9674

*Attorneys for Defendant and Appellant*
UNITED NATIONAL INSURANCE COMPANY

## CORPORATE DISCLOSURE STATEMENT

[F.R.A.P. Rules 26.1 and 28(a)(1).]

Appellant United National Insurance Company is a direct subsidiary of Global Indemnity Group, LLC, a holding company formed under the laws of Delaware and publicly traded on NASDAQ as GBLI.

TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT                    ii

TABLE OF CONTENTS                                iii

TABLE OF AUTHORITIES                              v

I.    JURISDICTION                               11

II.   ISSUES PRESENTED                           12

III.  STATEMENT OF THE CASE                      16

      1.   STATEMENT OF FACTS                    16

      2.   PROCEEDINGS IN
           THE DISTRICT COURT                    27

IV.   SUMMARY OF ARGUMENT                         40

V.    ARGUMENT                                   43

1.    The district court erroneously failed to enforce a
      qualified pollution exclusion to a lawsuit alleging
      only decades of continuous, routine pollution.     43

2.    The district court erroneously ruled that United's
      offer to defend later claims of sudden and
      accidental pollution was legally inadequate.        53

      A.   The district court mistakenly applied the
           1947 decision in *O'Morrow* to find that
           United owed a duty to provide independent
           counsel because United insured both the
           plaintiff and the defendant.                  55

B. The district court mistakenly disregarded evidence sufficient to support a finding that United properly segregated its claim files, as appropriate when defending adverse insureds in a lawsuit.    57

C. The district court erroneously ruled that United's reservation of rights on the narrow issue of the abruptness of the claimed pollution created a conflict of interest.    59

3. The district court erroneously ruled that LAT/Soco owed no duty to mitigate their defense-cost damages by accepting a full defense proffered by another insurer.    62

4. The district court erred by denying United a right to trial by jury on the contested issue of damages.    65

VI. CONCLUSION    68

VII. STATEMENT OF RELATED CASES    70

VIII. CERTIFICATE OF COMPLIANCE    70

iv

# TABLE OF AUTHORITIES

## Cases

*ACL Technologies, Inc.*
*v. Northbrook Property & Cas. Ins. Co.*,
17 Cal.App.4th 1773 (1993)      34, 44, 61

*Aeroquip Corp. v. Aetna Cas. & Sur. Co.*,
26 F.3d 893, 894 n.1 (9th Cir. 1994)      67

*A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*,
57 Cal.App.4th 427 (1997)      49, 52

*All Green Electric, Inc. v. Security Nat'l Ins. Co.*,
22 Cal.App.5th 407 (2018)      46

*American Motorists Ins. Co. v. Sup. Ct.*,
68 Cal.App.4th 864 (1998)      37-38, 55-67

*American States Ins. Co. v. Sacramento Plating, Inc.*,
861 F.Supp. 964 (E.D. Cal. 1994)      47-49, 52

*Amato v. Mercury Cas. Co.*,
18 Cal.App.4th 1784 (1993)      65

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)      58

*Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*,
302 F.3d 1049 (9th Cir. 2002)      46

*Aydin Corp. v. First State Ins. Co.*,
18 Cal.4th 1183 (1998)      43

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)      65

*Brandon & Tibbs*
*v. George Kevorkian Accountancy Corp.,*
226 Cal.App.3d 442 (1990)     63

*Buss v. Superior Court,*
16 Cal.4th 35 (1997)     54

*Centex Homes v. St. Paul Fire & Marine Ins. Co.,*
237 Cal.App.4th 23 (2015)     54, 56

*Citi Apartments, Inc. v. Markel Ins. Co.,*
2007 WL 1689013 (N.D. Cal. 2007)     60

*Cool Fuel, Inc. v. Connett,*
685 F.2d 309 (9th Cir. 1982)     31, 54, 58, 64

*Credit Suisse First Boston Corp. v. Grunwald,*
400 F.3d 1119 (9th Cir. 2005)     67

*Emerald Bay Community Assn.*
*v. Golden Eagle Ins. Corp.,*
130 Cal.App.4th 1078 (2005)     63

*Faust v. The Travelers,*
55 F.3d 471 (9th Cir. 1995)     54

*Federal Ins. Co. v. MBL, Inc.,*
219 Cal.App.4th 29 (2013)     24, 32, 56-58, 60

*Friedman Prof. Mgt. Co., Inc. v. Norcal Mut. Ins. Co.,*
120 Cal.App.4th 17 (2004)     51

*Gasperini v. Ctr. for Humanities, Inc.,*
518 U.S. 415 (1996)     66

*Gray v. Zurich Ins. Co.*
65 Cal.2d 263 (1966)     44

vi

*Green v. Smith,*
261 Cal.App.2d 392 (1968)      64

*Healy Tibbitts Constr. Co. v. Foremost Ins. Co.,*
482 F.Supp. 830 (N.D.Cal. 1979)      54

*Hollyway Cleaners & Laundry Co.*
*v. Centr. Nat'l Ins. Co. of Omaha,*
219 F.Supp.3d 996 (C.D.Cal. 2016)      60

*Infor Global Solutions (Michigan), Inc.*
*v. St. Paul Fire & Marine Ins. Co.,*
2009 WL 5909257 (N.D. Cal. 2009)      67

*Li v. Yellow Cab Co.,*
13 Cal.3d 804 (1975)      56

*Los Angeles Lakers, Inc. v. Federal Ins. Co.,*
869 F.3d 795 (9th Cir. 2017)      45, 51

*MAG Aerospace Ind., LLC*
*v. Precise Aerospace Mfg., Inc.,*
856 Fed.Appx. 709 (9th Cir. 2021)      64

*McMillin Cos. v. Am. Safety Indem. Co.,*
233 Cal.App.4th 518 (2015)      43

*Minneapolis & S. L. R. Co. v. Bombolis,*
241 U.S. 211 (1916)      66

*Merritt v. Reserve Ins. Co.,*
34 Cal.App.3d 858 (1973)      54

*Montano v. City of South Gate,*
13 Cal.App.3d 446 (1970)      54

*Montrose Chem. Corp. v. American Motorists Ins. Co.*,
16 Cal.Rptr.2d 516 (1993) (depublished)                    67

*Biweekly Admin., Inc. v. Superior Ct.*,
9 Cal.5th 279 (2020)                                       66

*Olympic Club v. Underwriters at Lloyd's London*,
991 F.2d 497 (9th Cir. 1993)                            45, 51

*O'Morrow v. Borad*,
27 Cal.2d 794 (1946)                    13, 14, 30, 41, 55-58

*Previews, Inc. v. Cal. Union Ins. Co.*,
640 F.2d 1026 (9th Cir. 1981)                             59

*San Diego Navy Fed. Credit Union v
Cumis Ins. Society*,
162 Cal App 3d 358 (1984)                       28, 59, 61, 62

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal.4th 643 (2005)                                     44

*SEC v. Jensen*,
835 F.3d 1100 (9th Cir. 2016)                             65

*Sempra Energy v. Assoc. Elec. & Gas Ins. Services Ltd.*,
473 F.Supp.3d 1052 (C.D.Cal. 2020)                        60

*Shaffer v. Debbas*,
17 Cal.App.4th 33 (1993)                               15, 63

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
12 Cal.App.4th 715, 752-755 (1993)              34, 43, 59, 61

*Sony Computer Ent. America Inc.
v. Am. Home Assur. Co.*,
532 F.3d 1007 (9th Cir. 2008)                   45, 46, 51 52

*State of California v. Allstate Ins. Co.,*
45 Cal.4th 1008 (2009)      48, 52

*Swanson v. State Farm Gen. Ins. Co.,*
219 Cal.App.4th 1153 (2013)      62

*Tibbs v. Great American Ins. Co.,*
755 F.2d 1370 (9th Cir. 1985)      54

*Tomerlin v. Canadian Indem. Co.,*
61 Cal.2d 638 (1964)      56

*Transamerica Occidental Life Ins. Co. v. DiGregorio,*
811 F.2d 1249 (9th Cir. 1987)      65

*Travelers Cas. Sur. Co. v. Superior Court,*
63 Cal.App.4th 1440 (1998)      48

*Travelers Property v. Centex Homes,*
2011 WL 1225982 (N.D. Cal. 2011)      60

*Vann v. Travelers Cos.,*
39 Cal.App.4th 1610 (1995)      44

*Venoco, Inc. v. Gulf Underwriters Ins. Co.,*
175 Cal.App.4th 750 (2009)      48

*Winans v. State Farm Fire & Cas. Co.,*
968 F.2d 884 (9th Cir. 1992)      43

*Zurich Am. Ins. Co. v. Ironshore Spec. Ins. Co.,*
964 F.3d 804 (9th Cir. 2020)      43, 50

## **Statutes**

Cal. Civ. Code §1485                                        13, 54, 62

Cal. Civ. Code §1494                                              54

Cal. Civil Code §2860                          14, 28, 34, 59, 60

## **Treatises**

Croskey *et al.*, *California Practice Guide:*
*Insurance Litigation* (The Rutter Group 2019)          43, 53, 63

Eisenberg, et al., *Cal. Practice Guide:*
*Civil Appeals & Writs* (The Rutter Group 2022)              67

# I. JURISDICTION

The district court had subject-matter jurisdiction over this action between citizens of different states addressing a controversy exceeding $75,000. 28 U.S.C. §1332. At the time of removal to the district court, lone plaintiff L.A. Terminals, Inc., was a California corporation with a principal place of business in Omaha, Nebraska, where its indirect parent Berkshire Hathaway is located. (9th Cir. dkt. 16, p. 2; 2-ER-120, 176, 215.) Soco West, Inc., another Berkshire Hathaway company later added as a plaintiff, was a Delaware corporation with a principal place of business in Connecticut. (*Id.*; 3-ER-546.) United National Insurance Company remains a Pennsylvania corporation with a principal place of business in Pennsylvania. (3-ER-546.)

The district court entered a final judgment (1-ER-3) in favor of L.A. Terminals and Soco West and against United based on prior orders granting and denying the parties' respective motions for dismissal and summary judgment. (1-ER-5-47.) The court then denied both sides' motions to alter or amend the judgment. (1-ER-2.) United timely appealed (3-ER-576), such that this Court may review all issues concerning the district court's summary-judgment orders.

## II. ISSUES PRESENTED

This insurance action stems from underlying state-court action for cleanup costs for pollution near the Los Angeles harbor initially brought by a non-party, the City of Los Angeles, against United's insured L.A. Terminals. L.A. Terminals then filed a federal action involving the same pollution against the City, which counterclaimed against L.A. Terminals. Soco West was later added to the state-court action and third-partied into the federal action.

In the district-court record, L.A. Terminals is often referred to as LAT. When describing the underlying allegations against or by L.A. Terminals and Soco West jointly, this brief refers to them together as LAT/Soco.

Here, LAT/Soco sought defense and indemnity from United as to the claims against them in the state action and in the federal action. The district court issued declarations in favor of LAT/Soco and adjudged and ordered United to pay LAT/Soco's underlying defense expenses. On appeal, United addresses four issues:

**Issue 1—duty to defend**: No one disputed that the City's state action against L.A. Terminals initially alleged claims entirely within the United policies' exclusion for damage "arising out of the discharge, dispersal, release or escape of … pollutants into or upon land, the atmosphere or any water course or body of water." (3-ER-520 [Fact 4].) Instead, the question was whether the state action implicated an exception to the exclusion "if such

discharge, dispersal, release or escape is sudden and accidental." (*Id*.) In August 2018, United declined L.A. Terminals' initial tender of the state action because the City alleged only transportation, leakage, spillage, disposal, and seepage of toxic chemicals over a half century of routine operations. (3-ER-376.) The district court, however, concluded (1-ER-39-42) that the City's allegations avoided the pollution exclusion and implicated a duty to defend. Did the district court rule correctly?

**Issue 2—tender of performance**: In April 2019, United agreed to defend the City's new claims against LAT/Soco alleging sudden and accidental pollution, and United appointed experienced pollution-defense counsel. (2-ER-334-343.) Proper tender of performance satisfies a contractual duty. Cal. Civ. Code §1485. But the district court found United's tender improper by finding LAT/Soco entitled instead to appointment of independent counsel at United's expense, on three key grounds:

a.      United agreed to defend LAT/Soco against the City's claims while also defending the City (an additional insured under the same policies) against LAT/Soco's claims. The district court found independent counsel always required "where the insurer insures both the plaintiff and the defendant" under *O'Morrow v. Borad*, 27 Cal.2d 794, 799 (1946) (1-ER-24, 43, 45), a case premised on California's former tort rule of contributory negligence abolished in 1975. No other court has so applied

13

*O'Morrow* in 78 years. Did the district court apply it correctly here?

b. Even if *O'Morrow* remained viable, under California law an insurer defending both sides of a dispute reconciles perceived conflicts when the insurer segregates its claim files. The evidence here showed that United segregated its claim files, but mistakenly included a City defense report in both files. (2-ER-210-212.) That same evidence showed that the error was discovered promptly and the report deleted before it was read, but the district court nonetheless summarily adjudicated—*as a matter of law*—that United failed to properly segregate its claim files and so failed to reconcile the perceived conflict under *O'Morrow,* such that United owed independent counsel. (1-ER-25.) Did the district court rule correctly?

c. In agreeing to defend LAT/Soco against the claims in the underlying pollution cases, United reserved the right to disclaim indemnity for a settlement or judgment to the extent the claimed pollution liability did not result from "sudden" releases, while waiving any reservation as to "accidental" releases. (2-ER-337; 342.) California courts treat an insurer's reservation of rights about mere temporal issues surrounding noncovered damages as legally irrelevant to an insured's underlying liability, thereby creating no duty to appoint independent counsel under Cal. Civ. Code §2860. The district court ruled that, because the exception to the pollution exclusion referred to both "sudden" and "accidental"

pollution, the possibility that LAT/Soco could have been liable for accidental pollution implicated a conflict of interest, even though United had waived reservation on that point. (1-ER-26-27.) Did the district court correctly disregard United's waiver of any reservation of rights about accidental pollution?

**Issue 3—mitigation of damages**: Every plaintiff suing for damages under a contract, including an insurance contract, "has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993). United adduced undisputed evidence that LAT/Soco requested and received an offer of full defense from another insurer affording $15 million in insurance but then declined the offer to instead sue United. (2-ER-202-207 [admitting facts 34-53].) The district court ruled—again as a matter of law—that LAT/Soco owed no duty to mitigate because the proffered defense would have reduced the other insurer's $15 million in insurance limits. (1-ER-30.) Did the district court correctly refuse to permit a jury to determine the defense of failure to mitigate?

**Issue 4—damages**: Under the Seventh Amendment to the U.S. Constitution, the "the right of trial by jury" at common law applies to contract actions like this. LAT/Soco sought damages by way of defense expenses through summary judgment (3-ER-594-596 [dkt. 130-142]) and United adduced evidence in rebuttal and demanded a jury. (2-ER-122-193.) The district court dodged both

requests and instead issued an order and judgment asserting equitable authority to direct "United to pay Plaintiffs' defense costs in full, starting from" the original tender. (1-ER-3 [judgment],6 [order].) If any portion of LAT/Soco's claims survive appeal, should the judgment be reversed with directions that damages be determined by a jury?

## III. STATEMENT OF THE CASE

### 1.    STATEMENT OF FACTS

***The policies.***

From 1982 to 1985, United issued four policies to "Marken Enterprises, Inc." (3-ER-435-517 [policies].) Marken subsidiaries LAT/Soco qualify as insureds under all four. (3-ER-519 [fact 1].) Marken no longer owns LAT/Soco, which were acquired by Berkshire Hathaway. (9th Cir. dkt. 16, p. 2; 2-ER-120, 176.) The last three policies also identified the City of Los Angeles as an additional insured. (3-ER-519 [fact 2].)

The policies first state that United "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … property damage to which this insurance applies," and United "shall have the right and duty to defend any suit against the insured seeking damages on account of such … property damage …." (3-ER-519-520 [fact 3].) The policies define "property damage" in part as "physical injury to or

16

destruction of tangible property." (3-ER-547, ¶8.) There is no dispute about the scope of this coverage in the first instance.

The issue instead focuses on the policies' exclusion (f), the pollution exclusion, which precludes coverage for any property damage "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." (3-ER- 520 [fact 4].)

For the 1983-1984 coverage year, LAT/Soco also had excess liability insurance available from AIG group insurance companies (Granite State, Lexington, and National Union) with collective limits of $15 million. (2-ER-202-204 [admitting facts 34-42].)

### *The underlying state complaint.*

In January 2018, the City of Los Angeles sued L.A. Terminals (but not Soco West), among others, in Los Angeles Superior Court alleging contamination and pollution at the Port of Los Angeles.

In March 2018, the City filed a first amended complaint (3-ER-408); that is the operative pleading L.A. Terminals initially tendered to United (3-ER-552, ¶25) and is referred to here as the state complaint.

In the state complaint, the City alleged that, from 1947-1994, a parcel it owns in the Harbor District was used by

businesses, including L.A. Terminals during the 1980s and 1990s. (3-ER-409, ¶2; 410-411, ¶¶11-12.) L.A. Terminals allegedly used part of the site "for the maintenance and operation of a marine chemical terminal and storage facility." (3-ER-412, ¶16.) L.A. Terminals and earlier businesses "provided, handled and stored a variety of toxic and hazardous chemicals at the Site premises." (3-ER-412, ¶17.) Their business "involved transportation of certain hazardous materials … that leaked from storage tanks, pipes, spilled or were disposed of on the ground, into the soil and seeped into the groundwater." (3-ER-413, ¶18.) The City alleged that the "operations conducted by" those defendants "during L.A. Terminals' multi-decades long tenancy at the Site … are responsible for the soil, sediment, and groundwater pollution and contamination at, on, and near the Site premises" (3-ER-415, ¶23) and that "the deposit or releases of hazardous substances onto and into the soil, sediment, and groundwater" had been ongoing "[s]ince 1947." (3-ER-416, ¶31; 417-418, ¶38.) The "contamination at, on, or around the Site premises is continuing, …." (3-ER-417, ¶34; 418, ¶42.)

### *United declines the defense of the state complaint.*

In May 2018, L.A. Terminals' attorney, Richard Montevideo of Rutan & Tucker, notified United of the state complaint and requested defense. (3-ER-406.) United declined the tender on grounds that the City's pleading exposed L.A. Terminals only to liability within each policy's pollution exclusion. (3-ER-379.) United explained that the alleged pollution did not implicate the

18

exclusion's exception for "sudden and accidental" releases because the City did "not allege" or imply that the damaging releases were "sudden," but instead were "continuous, long-term pollution damage arising from the day-to-day business operations of various companies, including L.A. Terminals, for about fifty years." (*Id.*) Because United had "not been notified of any facts outside of the complaint which indicate that any 'sudden and accidental' release occurred," the letter explained that coverage for the suit "appears barred by the pollution exclusion in each policy." (*Id.*)

The letter invited L.A. Terminals to send "facts, documents and/or legal reasoning" that warranted reconsideration and "to contact the undersigned" adjuster "if you have any questions regarding the position set forth in this letter, or if you believe any of the information contained herein is inaccurate or should be supplemented in any way." (3-ER-380.) L.A. Terminals has acknowledged that it thereafter "provided no additional information to United." (3-ER-555, ¶37.)

### *AIG offers to defend the state complaint. LAT/Soco decline.*

Montevideo concurrently asked AIG to defend L.A. Terminals against the state complaint. (2-ER-204 [admitting fact 46]; 278 [letter].) AIG responded with two letters reserving rights. (2-ER-261, 269.) Montevideo wrote again reiterating that "LAT looks forward to receiving a defense … pursuant to the terms of the subject [AIG] policies." (2-ER-259.)

On August 14, 2018, a week after United's declination letter, AIG wrote to Montevideo agreeing to defend upon confirmation that

a $10,000 deductible had been paid, as it had. (2-ER-205 [admitting fact 49]; 326 [letter].) AIG requested Montevideo's rates (2-ER-328 [letter]) and agreed to reimburse the expenses L.A. Terminals had incurred since it had notified its insurers. (*Id*.; 2-ER-206 [admitting fact 51].)

Both Montevideo and the LAT/Soco corporate designee Raj Mehta testified in this proceeding that AIG had accepted their tender of defense of the state action. (2-ER-222-223 [Mehta]; 251 [Montevideo].) Montevideo confirmed his "understanding … that AIG was amenable to continuing to utilize–have Rutan and Tucker remain on as counsel to represent LAT and then ultimately Soco West" when Soco West was later included in the litigation. (2-ER-251.) Montevideo understood that "AIG was amenable to reimbursing us for our expenses and paying those on a going-forward basis." (2-ER-253.)

LAT/Soco rejected AIG's offer of defense and reimbursement. (2-ER-206-207 [admitting fact 53].) Montevideo refused to answer why (2-ER-252-253); Mehta testified that they did so because, unlike the United policies that afforded defense outside of limits, "AIG had a declining limits policy, so any defense it would provide would go against our policy limits" of $15 million. (2-ER-223.)

### *The underlying state cross-complaint.*

United's August 6, 2018, declination letter had invited L.A. Terminals to provide "facts outside of the [state] complaint" to satisfy the pollution exclusion's exception for "sudden and

20

accidental" releases. (3-ER-379.) As noted, L.A. Terminals provided no such information. (3-ER-555, ¶37.)

Instead, on August 10, 2018, attorney Montevideo filed a new cross-complaint on behalf of L.A. Terminals against the City, countering the state complaint. (3-ER-387.) Into the cross-complaint Montevideo inserted boilerplate allegations that the site's "contamination was caused by various sudden and accidental releases" by cross-defendants Phillips 66 Co. and Occidental Chemical Corp. (as well as Occidental's predecessor). (3-ER-389, ¶20; 291, ¶33.)

### *The underlying federal complaint.*

Concurrent with its new cross-complaint in the state action, L.A. Terminals filed an original federal complaint against the City and others, alleging claims under the federal Comprehensive Environmental Response, Compensation, and Liability Act, or CERCLA. (3-ER-383.) L.A. Terminals acknowledged that the new federal complaint centered on "the same environmental contamination" alleged in City's state complaint but was brought in federal court because of the CERCLA claims. (3-ER-550, ¶20.) Like its state cross-complaint, L.A. Terminals' federal complaint asserted unadorned claims that the pollution was "caused by various sudden and accidental releases" by Occidental. (3-ER-385, ¶14.)

21

### *The City tenders L.A. Terminals' state cross-complaint and federal complaint to United.*

Because the City qualified as an additional insured under policies United issued to L.A. Terminals, the City tendered the new state cross-complaint along with the new federal complaint to United for defense. (3-ER-381.) Because L.A. Terminals had asserted that the City's liability was premised on unspecified acts of "sudden and accidental" pollution, in September 2018 United agreed to defend the City against in both actions under a reservation of rights. (3-ER-356; 366.).

### *United asks L.A. Terminals why its new pleadings against the City alleged "sudden and accidental" releases.*

United learned of L.A. Terminals' state cross-complaint and federal complaint only because the City had tendered them. Seeing that the pleadings expressly alleged acts of "sudden and accidental" pollution, whereas the City's state complaint against L.A. Terminals had neither alleged nor implied any, on September 7, 2018, United wrote to Montevideo noting that his new pleadings "repeatedly allege without explication that the pollution at issue was indeed caused and contributed to by 'sudden and accidental' releases or spills of hazardous materials and chemicals." (3-ER-375.) Referencing United's first letter's request for additional information, the second letter "once again invite[d]" L.A. Terminals "to provide us with any and all facts and evidence

supporting the 'sudden and accidental' allegations made in" L.A. Terminals' own pleadings. (*Id.*) Again, there was no response.[1]

### *After six months of silence, LAT/Soco tender new complaints and United agrees to defend.*

In February 2019, L.A. Terminals, then joined by Soco West, tendered to United four new pleadings from the federal action. (2-ER-344.) In that action, defendants the City and Occidental each filed counterclaims against L.A. Terminals and third-party complaints against Soco West. (2-ER-345.) As LAT/Soco allege here, each of those pleadings centered on the pollution first raised by the City in the state complaint. (3-ER-551, ¶22.) Occidental specifically alleged that the "contamination was caused, in whole or in part, by one or more releases of hazardous materials, including sudden and accidental" releases. (3-ER-551 ¶23; 3-ER-352, ¶19.)

Because the new pleadings alleged that LAT/Soco had caused "sudden and accidental" releases of pollutants, in April 2019, United agreed to defend the counterclaims and third-party claims against LAT/Soco in the federal action and L.A. Terminals in the state action. (3-ER-334-343.) United's reservation-of-rights

---

[1] When asked in deposition why L.A. Terminals never responded to the September 2018 letter, Montevideo claimed he was being "harassed" (2-ER-244) and that United was "trying to find out what my work product was or what communications potentially I had with clients" (*id.*), and thus threatened to "terminate the deposition and not answer any more of your questions." (2-ER-246.)

letters emphasized that United did not reserve rights on the "accidental" prong of the exception, but instead reserved the right to disclaim indemnity only to the extent the alleged releases of pollution were not "sudden." (3-ER-337, 342.)

Because the City and LAT/Soco had sued one another relating to the same underlying pollution and United had agreed to defend these entities against each other's claims under common policies, United followed the guidance of *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 46-47 (2013), to segregate the claim files. United hired different law firms to defend the City and LAT/Soco, respectively. (3-ER-528 [fact 32].) United's initial claims handler testified that the claim file was "split immediately thereafter … to avoid any sort of conflict between any of the four portions of the matter." (3-ER-403.) At that point—once United had agreed to defend both the City on the one hand and LAT/Soco on the other— "the claims were separated" and "were broken down into four separate claims people"—two coverage, two defense—with segregated files. (3-ER-400.) After that, "there was no communication between any of the four adjusters regarding any – any of this – this case, any aspect of the claims, any questions, any answers. Communications were completely closed." (3-ER-401.)

As the initial handler testified, the claim file had been opened under the name of the first named insured, Marken Enterprises (LAT/Soco's parent in the 1980s before Berkshire Hathaway acquired them), and remained a single file until United accepted the defense of LAT/Soco. (3-ER-395.) She understood the

claim "file was empty other than the initial plead[ing], the tender materials and the declination letter." (3-ER-397.)

But she had forgotten an administrative error made in separating the file. LAT/Soco later adduced an email thread started by the newly assigned defense adjuster for LAT/Soco alerting the initial representative that the file received appeared to have a report from the City's defense counsel. (2-ER-210.) She wanted to "check before [she] review[ed] the defense report" (3-ER-211); in response she was instructed that the report "shouldn't be in the file" and to delete it (3-ER-210); the new adjuster then confirmed "I will not read and will delete to keep everything clean." (*Id.*) LAT/Soco adduced no evidence to contradict the new adjuster; the error was corrected.

We mention this because, as will appear, LAT/Soco persuaded the district court that this corrected administrative error changed the outcome of the case.

### *United offers proven trial counsel to defend LAT/Soco against the state complaint and federal counterclaims.*

United's reservation letters also offered to appoint attorney John Brydon of Demler, Armstrong & Rowland LLP to defend LAT/Soco. (3-ER-527 [Fact 24].) Brydon is a trial attorney and an ABOTA Diplomate (over 100 civil trials to verdict) (2-ER-236) with copious pollution trial experience (2-ER-232-234) and a recent defense verdict in a months-long jury trial for—like LAT/Soco—a distributor of perchloroethylene (PCE), a pollutant involved in the underlying harbor litigation here. (2-ER-233; e.g., 3-ER-413, ¶18

[PCE].) LAT/Soco rejected United's proposed defense and instead demanded that United hire Montevideo[2] as their independent counsel. (3-ER-528 [fact 26].) United declined, though held open the offer of Brydon throughout the litigation. (*Id*. [fact 27].)

***The underlying litigation settles.***

In April 2023, the underlying state and federal pollution cases were automatically stayed when L.A. Terminals and Soco filed Chapter 11 bankruptcy petitions. (2-ER-51-90). In a July 2023 status report in the federal action, Montevideo noted that pre-bankruptcy LAT/Soco "had negotiated a proposed Consent Decree with" other parties that "would have resolved all pending claims amongst" those parties "and with all other remaining parties in this action agreeing to stipulate to dismiss all other claims pending in this action … thereby fully resolving the current action." (C.D.Cal. No. 2:18-cv-06754-MWF-PCV, Dkt. 462.)[3] In January 2024, Montevideo filed another status report stating that he and others had been working with a mediator to finalize the consent decree and resolve the underlying state and federal cases in full. (*Id.,* Dkt. 464.)

---

[2] Montevideo testified that he had tried "maybe a half dozen" cases to verdict in his career (2-ER-247), had "never taken a CERCLA case to verdict," and had "no idea" if any lawyer at Rutan & Tucker ever had. (2-ER-248.)

[3] If the Court or counsel believe these filings should be added to the record, United will formally request judicial notice.

## 2. PROCEEDINGS IN THE DISTRICT COURT

### *The complaints.*

On January 8, 2019, L.A. Terminals commenced this insurance litigation by filing a complaint in state court against United for breach of contract, declaratory relief, and breach of the covenant of good faith. (3-ER-570.) On January 16, 2019, L.A. Terminals served United. (3-ER-573.) On February 13, 2019, United timely removed to the federal district court for the Central District of California. (3-ER-573.) An amended complaint was later filed adding Soco West, Inc., as a co-plaintiff and asserting the same claims (3-ER-568), and later LAT/Soco filed their operative second amended complaint. (3-ER-545.) LAT/Soco's claims addressed in this appeal were:

- their first claim seeking a declaratory judgment that LAT's initial tender of the City's state complaint triggered a duty to defend LAT even without any allegation or implication of "sudden and accidental" releases to avoid the United policies' pollution exclusion (3-ER-559);

- their second claim seeking a declaratory judgment that they were entitled to independent counsel, either because United had agreed to defend insureds on opposing sides of the same lawsuit or because United's agreement to defend LAT/Soco against the later pleadings adding allegations of "sudden and accidental" releases entitled LAT/Soco to independent

27

(or *"Cumis"*)[4] defense counsel under Cal. Civil Code §2860 (3-ER-560); and

- their third claim for breach of the duty to defend, seeking damages by way of Rutan & Tucker's fees and expenses incurred defending the pollution actions. (3-ER-562.)

***United's dismissal motion***.

United moved to dismiss the second amended complaint (3-ER-539), a motion detailed here because the district court incorporated its dismissal rulings into later summary-judgment rulings. United argued *inter alia* that

- the first claim for declaratory judgment failed because the City's state complaint had neither alleged nor implied any releases of pollution within the "sudden and accidental" exception to the pollution exclusion (3-ER-542);

- the second claim for a declaratory judgment failed because United's concurrent defense of the City created no legal conflict and because United's reservations of rights created no conflicts of interest to require appointment of independent counsel under Civil Code §2860 (3-ER-542); and

- The third claim for breach of the duty to defend failed for the same reasons, and because LAT/Soco's rejection of United's proper offer to perform the duty to defend the new pleadings

---

[4] See, *San Diego Navy Fed. Credit Union v Cumis Ins. Society*, 162 Cal App 3d 358 (1984).

by hiring experienced pollution defense counsel extinguished United's obligation as a matter of California law. (3-ER-543.)

The district court denied United's motion. (1-ER-33.)

The district court first addressed United's contention that the pollution exclusion applied to preclude a duty to defend because, as the district court framed the issue, the state complaint "did not specifically allege 'sudden and accidental' environmental contamination" and LAT/Soco had presented no "evidence the exclusion did not apply." (1-ER-40-41.) Although United focused on LAT/Soco's inability to demonstrate that the "sudden" prong of the exception applied, the district court primarily addressed "accidental" releases, noting that the state action alleged that "the defendants there 'were negligent in ... their receiving, storing and handling of hazardous substances and chemicals' resulting in contamination of the soil and groundwater." (1-ER-41.) This the court concluded "suggests that the conduct on which Plaintiffs' liability hinges is alleged to be accidental." (*Id.*)

The court rejected United's view that "the City's allegations of gradual, long-term pollution demonstrate that the environmental contamination was not sudden," reasoning that "allegations of historic pollution do not foreclose the possibility that the alleged property damage was caused, at least in part, by a sudden release of contaminants," which the court found inherently "factual questions that support a finding of a duty to defend." (*Id.*) It is this reasoning that United first contends to be error.

The district court next addressed United's contention that it had not breached its duty to defend the amended pollution lawsuit because United had offered to hire experienced defense counsel skilled in pollution litigation. The court adopted LAT/Soco's theory that United's "agreement to defend the City and [LAT/Soco]— adverse parties in the underlying litigation—created an untenable conflict of interest necessitating the appointment of independent counsel." (1-ER-42.) The court reasoned that a conflict requiring independent counsel exists "where the insurer insures both the plaintiff and the defendant." (1-ER-43, citing *O'Morrow v. Borad*, 27 Cal.2d 794, 799 (1946).) The district court rejected United's points that no case had followed the 1946 decision in *O'Morrow*, which had been rooted in the long-abandoned tort doctrine of contributory negligence.

### *The partial settlement.*

United moved for partial summary judgment on LAT/Soco's fourth claim for bad faith. (3-ER-590 [dkt. 101].) Following briefing, the parties settled the claim and LAT/Soco dismissed it. (3-ER-594, 596 [dkt. 126, 152, 154].) That left only LAT/Soco's first three claims based on contract still at issue.

### *The partial summary judgment on LAT/Soco's contract claims.*

Meanwhile, LAT/Soco moved for summary judgment (1) on their first claim that the City's state complaint had triggered United's duty to defend L.A. Terminals despite the lack of any

allegation or evidence of "sudden" releases, (2) on their second claim that they were entitled to appointment of independent counsel, and (3) on their third claim that United breached these obligations. (3-ER-533.) United opposed and requested entry of judgment in its favor under *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). (2-ER-324.) The district court granted LAT/Soco's motion in part. (1-ER-13.)

Addressing the first claim for a declaration of United's duty to defend the state complaint, the district court referred to its prior ruling on United's motion to dismiss, where the court had found a duty to defend the state complaint. The court ruled that "nothing before the Court disturbs its prior conclusion." (1-ER-22.) "What matters," the court further reasoned, "is whether it was 'reasonably inferable' from the [state complaint] that the City's claim against LAT was *potentially* covered under the Policies." (*Id.,* italics original, cit. omitted.) The state complaint "alleged that LAT was negligent in handling hazardous substances and chemicals, and the Court [earlier] found this was broad enough to include 'accidental' releases." (*Id.*) "That the contamination allegedly occurred over decades does *not foreclose the possibility* that LAT's alleged contribution to the contamination *could have been 'sudden.'*" (*Id.,* italics added.) The district court therefore found LAT/Soco "entitled to judgment as a matter of law on the first claim." (1-ER-23.)

The district court next granted summary judgment on LAT/Soco's second claim and declared that LAT/Soco had been entitled to appointment of independent counsel to defend the

pollution lawsuit. (1-ER-23.) Again referring to its order denying dismissal, the district court looked first to the fact that United had agreed to defend not only LAT/Soco, but also the City—their adversary on their cross-complaint that responded to the City's state complaint. "The Court previously found such a direct conflict supports the need for Plaintiffs' independent counsel," reasoned the court, and the court "reaffirm[ed] that finding" on summary judgment. (1-ER-24.)

The district court also addressed United's point that United had—as called for when defending adverse insureds in *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th at 46-47—"reconciled the [perceived] conflict by splitting the claim file for each insured and appointing segregated liability adjusters." (1-ER-25.) The court acknowledged that, "after United agreed to defend LAT and Soco, in April 2019, it separated the claim files and hired different law firms to defend the City and [LAT/Soco]." (*Id.*) But the court noted that, earlier, United had continued to maintain a single file after it had accepted the City's defense in September 2018 and until the City's new allegations of "sudden" releases against LAT/Soco caused United in April 2019 to agree to defend LAT/Soco as well, after which the file was separated. (*Id.*) The district court concluded that United's first adjuster "*sent the master claims files to both sides." (Id.,* italics orig.)

The district court disregarded evidence submitted with LAT/Soco's own motion that the file was thought to be "empty other than the initial plead[ing], the tender materials and the declination letter." (3-ER-397 [adjuster deposition].) Instead, the

court seized on the administrative error that had left in the file "an attorney's claims assessment report" provided "to both new adjusters." (1-ER-25.) The district court acknowledged United's point that neither adjuster "read documentation about the other side" (*id.*), referring to the LAT/Soco reply exhibit showing an email thread by the newly assigned defense adjuster for LAT/Soco. (2-ER-210-212.) The email had alerted the initial adjuster that the file appeared to have an opposing report, which she was instructed "shouldn't be in the file" and should be deleted; the adjuster then confirmed "I will not read and will delete to keep everything clean." (2-ER-210-211.) As noted, LAT/Soco had adduced no evidence to contradict the new adjuster.

Despite this, the district court found "no support" for United's "speculative, eleventh-hour" contention that the new adjuster had not "actually read documentation about the other side of the claim." (1-ER-25.)[5] Because of that, the district court concluded that the file had not been segregated, leading the court to rule—as a matter of law—that "United did not reconcile the conflict of interest created by its defense of direct litigation adversaries." (*Id.*) The court thus held independent counsel legally required.

On the same second claim, the district court alternatively adopted LAT/Soco's theory that, when United reserved rights under the pollution exclusion, United created a conflict of interest

---

[5] United raised this point in a sur-reply (2-ER-196-197), with permission (2-ER-199), because LAT/Soco had proffered the email thread for the first time in its reply.

under Cal. Civil Code §2860. (1-ER-26.) United's reservation letters to LAT/Soco, recall, had reserved the right to disclaim a duty to indemnity because of the pollution exclusion, except for pollution within the exclusion's exception for "sudden and accidental" pollution. (2-ER-337, 342.) But United eliminated LAT/Soco's need to show "accidental" pollution, expressly requiring in its letters that LAT/Soco show only "the sudden nature of any alleged releases and not to whether any releases were accidental" to avoid the exclusion. (*Id*.)

The district court concluded that even such a limited reservation relating to the *ongoing* versus *sudden* pollution raised a conflict. The court reasoned (without explanation) that LAT/Soco could be found liable on a "theory based on ongoing, *deliberate* pollution (which precludes Plaintiffs' coverage) versus sudden, *unexpected* contamination (which provides Plaintiffs' coverage)." (1-ER-26-27, italics added.) The court thus conflated "accidental" releases with "sudden" releases, disregarding that "for there to be coverage (i.e., for the exclusion not to apply), the release must be both 'sudden and accidental.'" *ACL Technologies, Inc. v. Northbrook Property & Cas. Ins. Co.*, 17 Cal.App.4th 1773, 1785 (1993); e.g., *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 752-755 (1993) (finding "sudden" and "accidental" have distinct meanings).

The court found insignificant that United had required LAT/Soco only to show that their pollution was "sudden" (but not "accidental") to receive coverage, thus waiving the established rule under *ACL Technologies* requiring both. The court acknowledged

34

that United was "waiving 'accidental'" but reasoned that the pollution exclusion "excepts 'sudden and accidental,' not 'sudden or accidental'" (1-ER-26, fn. 1), suggesting that United lacked the ability to waive the "accidental" pollution requirement for coverage.

The district court then reached LAT/Soco's third claim for which they sought summary judgment that United had breached by failing to "immediately defend LAT upon its initial tender of the" state action, failing to "reimburse LAT's and Soco's defense costs to date," and failing to "provide LAT and Soco independent counsel." (1-ER-27.) The district court acknowledged United's defense that it had "eventually accepted LAT's defense of the [state] Action, and [had] accepted LAT's first tender of the Federal Action and Soco's initial tender of both actions." (1-ER-28; see Cal. Civil Code §85 ("offer of performance" satisfies obligations). But the court rejected this performance, reasoning that "United's eventual acceptance" could not "cure its breach" as a matter of law. (1-ER-29.)

As to the state complaint, then, the district court found that United had breached by failure "to provide independent counsel, or to reimburse LAT for the defense costs incurred." (*Id.*)

As to the City's cross-complaint in the state action and counterclaim in the federal action—the ones United had agreed to defend promptly and proposed defense counsel—the district court adopted the same reasoning and found United in breach because it failed "to reimburse LAT and Soco for defense costs incurred in

defending these actions"—before tendering anything to United—
"and refused to fund independent counsel." (1-ER-30.)

Finally, the district court turned to damages. The threshold
question was whether United's affirmative defense of failure to
mitigate (3-ER-537 [defense 4]) presented a triable issue or,
alternatively, precluded recovery as a matter of law based on the
undisputed evidence that LAT/Soco had declined an unconditional
offer by their excess insurer, AIG, to reimburse the same expenses
that LAT/Soco later sought against United and to defend the
ongoing litigation through Rutan & Tucker. The district court
rejected this defense, perceiving no jury issue at all, because the
court saw no authority that "requires [LAT/Soco] to accept excess
insurance, in this case to their detriment, to cover the costs [they]
incurred because United breached," noting that "the excess
policies would erode coverage limits" of $15 million by paying
defense expenses. (1-ER-30.)

The district court did, however, concur with United that
LAT/Soco's evidence of mere total defense expenses only
"established the fact of their damages, but not specific amounts"
and "deprived United of the opportunity to challenge, on the
record, the reasonableness and necessity of the claimed expenses."
(1-ER-31.) The district court then ordered both sides to submit
further evidence and briefing on the issue of damages. (*Id.*)

### *The damages submissions, rulings, and judgment.*

LAT/Soco submitted briefing and evidence claiming about
$5.2 million in underlying defense expense as damages. (3-ER-

36

514-516 [dkt. 130-142].) United objected to court determination of damages, which requires a jury under the 7th Amendment to the U.S. Constitution. (2-ER-170-171, citing *inter alia MedImmune, Inc. v. Genentech, Inc.,* 535 F.Supp.2d 1020, 1023 (C.D. Cal. 2008).) United offered detailed rebuttal evidence showing that LAT/Soco unreasonably incurred charges based on attorney Montevideo's lack of experience, ubiquitous use of prohibited block bills, improper staffing and overhead charges, and consultant fees both improperly charged and not applicable to the defense of the tendered actions. (2-ER-122-193.)

Following a hearing (3-ER-597 [entry 163]), the district court ordered the parties "to meet and confer ... to resolve plaintiff's damages." (*Id.*) The court held three more hearings (3-ER-598 [dkt. 169, 170, 173]; 2-ER-104-117 [transcript]) before issuing a substantive order and judgment. The order did not award damages as LAT/Soco requested but provided instead that "the Court now effectuates its prior summary judgment ruling by ORDERING United," under the claimed "equitable power" to enforce declaratory judgments, "to pay Plaintiffs' defense costs in full, starting from May 4, 2018," when the state complaint had been tendered, "thus mooting Plaintiffs' remaining claim for damages pursuant to breach of contract." (1-ER-6.)

The district court relied on *American Motorists Ins. Co. v. Sup. Ct.*, 68 Cal.App.4th 864 (1998), which applied state procedural rules and "considered a similar set of circumstances," permitting the Court to, "as described and affirmed in *American Motorists*, order[] full payment of all Plaintiffs' past, present, and

future defense costs" and thus "effectively moot[] the question of damages on the [plaintiffs'] third cause of action" for breach of the duty to defend. (1-ER-8.) And so, "pursuant to *American Motorists*, the Court hereby severs and decides Plaintiffs' equitable claims, such that Plaintiffs' 'duty to defend cause of action for breach-of-contract damages is moot.'" (1-ER-12.)

The same day, December 29, 2022, the district court entered a judgment in favor of LAT/Soco, adopting the court's declarations of rights, and directing United to "immediately pay Plaintiffs' defense costs, in full, as incurred starting from May 4, 2018, to the present day." (1-ER-3-4.)

### *Post-judgment motions, orders, and appeal*.

On January 24, 2023, United timely moved under Rule 59(e) to alter, amend, and vacate the judgment based on clear errors of law. (2-ER-98.) United contended that *American Motorists*' state-law procedural principles do not support the proposition that a federal court may "enforce" a duty to defend through an order compelling specific performance and did not support the order or judgment. (2-ER-100.) United contended that the district court's order and judgment amounted to either a permanent mandatory injunction or a directive for specific performance, neither of which was supported by the pleadings or evidence. (2-ER-102.)

On January 26, 2023, LAT/Soco likewise moved under Rule 59(e) to amend the judgment, asking the district court to add a money judgment for "$6,146,392.39 in defense costs incurred and

submitted to United for payment from May 4, 2018 until December 29, 2022," together with interest. (2-ER-95.)

On February 1, 2023, United moved to stay the judgment upon United posting an approved security under Rule 62(b). (2-ER-91.) United suggested security of $7,407,767.74 to account for principal and interest on appeal. (2-ER-94.)

On April 26, 2023, LAT/Soco both filed petitions under Chapter 11 of the U.S. Bankruptcy Code. (2-ER-51-90.) Each was filed with a parallel filing by their sister within the Berkshire Hathaway corporate family, Whittaker, Clark & Daniels, Inc. (2-ER-56, 76), triggered by Whittaker's adverse results in asbestos litigation. (2-ER-59, 79.)

On May 3, 2023, the district court noted the bankruptcy filings and ordered this insurance litigation stayed. (1-ER-2.) Referring to both sides' motions under Rule 59(e) and United's motion to stay the judgment, the court ordered that "these motions are DENIED without prejudice and as moot. Upon the stay being lifted, Plaintiffs and Defendant may renew their motions." (*Id.*). Because the district court had denied the parties' post-judgment motions and the judgment itself was appealable, United timely noticed this appeal on May 31, 2023. (3-ER-576.)[6]

Following a joint status report about LAT/Soco's bankruptcy (3-ER-601 [dkt. 200]), on August 16, 2023, the district court issued

---

[6] The LAT/Soco bankruptcy petitions stayed proceedings only against them and not—as here—by them. 11 U.S.C. §362(a)(1); *In re Merrick*, 175 B.R. 333, 337 (9th Cir. B.A.P. 1994). The petitions thus do not affect this appeal.

an order confirming that United's "appeal to the Ninth Circuit deprives this Court of jurisdiction" and so concluded that the court "lacks jurisdiction" to rule on the prior Rule 59(e) motions and, as such "the Court will take no further action…." (2-ER-50.)

## IV.   SUMMARY OF ARGUMENT.

The district court erroneously failed to enforce a qualified pollution exclusion to a lawsuit alleging only decades of continuous, routine pollution in the course of the insured's business. California law placed the burden on L.A. Terminals to establish that the City's state action initially created the potential for liability within the exception to United's pollution exclusion for "sudden and accidental" releases. But the district court adopted L.A. Terminals' speculation that the action created such potential and erroneously made it United's burden to disprove such speculative sudden-and-accidental releases. The judgment therefore should be reversed with directions to issue a new declaration that United owed no duty to defend the City's state action when initially tendered.

Next, United agreed to defend LAT/Soco through proven defense counsel against later claims alleging sudden-and-accidental releases. United had the contractual right to control its insureds' defense. But the district court declared United's offer to defend a breach of the insurance contracts because United did not agree to instead appoint independent counsel chosen by LAT/Soco. Each of the district court's three rationales legally erred.

40

First, the district court relied on *O'Morrow v. Borad*, 27 Cal.2d 794 (1946), to rule that United owed independent counsel because United had also agreed to defend its adverse party, the City. But the California Supreme Court based its ruling in *O'Morrow* on a contributory-negligence rule the same court abandoned in 1975 and *O'Morrow* had not been followed for this proposition in the intervening 78 years. The district court erred by doing so.

Second, under current law, concerns arising when an insurer defends adverse parties are reconciled when the insurer segregates its claim files. The evidence showed that United did so. But the district court nonetheless found—as a matter of law—that United failed to segregate and so had breached, pointing to a defense report mistakenly included in the common file provided to both liability adjusters, while disregarding unrebutted evidence that the mistake was promptly caught and corrected and the report never read. The district court erred.

Third, the district court ruled that United's narrow reservation of rights on the issue of the suddenness of the claimed pollution created a conflict of interest requiring independent counsel under California's governing statute. But courts have repeatedly held that mere temporal issues that do not relate to the insured's potential liability litigated in the underlying action do not create any such conflict nor require independent counsel. Again, the district court erred.

The judgment therefore should be reversed with directions either to enter judgment for United, which satisfied its duty to

defend by tendering proper performance, as a matter of law, or directing the issue to a jury.

Next, even assuming breach, United had raised the defense of LAT/Soco's failure to mitigate their damages by declining a proffer by their excess insurer, AIG, of a full defense. The district court ruled—again as a matter of law—that LAT/Soco owed no duty to mitigate because AIG's offered defense would have reduced its collective $15 million in insurance limits, even though no evidence was presented that those limits were at risk or that reduction through defense costs would have impeded LAT/Soco's ability to defend other, separate claims. Again, the district court erred. If the Court reaches this issue, the judgment should be reversed with directions to enter judgment for United as a matter of law under this defense or directing the issue to a jury.

Finally, in light of the district court's other rulings, LAT/Soco moved for summary judgment awarding damages for breach; United responded with evidence that the claimed damages were unreasonable and demanded a jury under the U.S. Const., Seventh Amendment. The district court erred by purporting to "moot" LAT/Soco's damages request, thereby denying a jury trial, through an equitable order and judgment no party had sought that directed United to pay LAT/Soco's past and future defense costs in full. If this Court reaches this issue, the judgment should be reversed with directions to proceed to a trial by jury on damages.

On appeal, the district court's summary-judgment orders based on interpretations of state law all should be reviewed *de*

*novo. Winans v. State Farm Fire & Cas. Co.*, 968 F.2d 884, 886
(9th Cir. 1992).

## V.    ARGUMENT.

## 1.    The district court erroneously failed to enforce a qualified pollution exclusion to a lawsuit alleging only decades of continuous, routine pollution.

LAT/Soco's first claim turned on whether United correctly
declined L.A. Terminal's initial tender of defense on the City's
state action. (3-ER-559, ¶¶55-59.) LAT/Soco admitted that the
state action alleged damage from pollution and so did not dispute
that it was excluded in the first instance by United's pollution
exclusion. (3-ER-5488, ¶13; see *Shell Oil Co.,* 12 Cal.App.4th at
753 ("This language created a broad exclusion from coverage for
any liability resulting from pollution.") The duty-to-defend
question has always turned on whether the exclusion's exception
for "sudden and accidental" pollution applied.

This "exception is properly construed as a coverage provision
when allocating the burden of proof." *Aydin Corp. v. First State
Ins. Co.*, 18 Cal.4th 1183, 1191 (1998). "Under California law, if
the insurer proves the applicability of an exclusion, the burden
shifts back to the [insured] to prove that an exception to the
exclusion applies, such that the insurer owed a duty to defend."
*Zurich Am. Ins. Co. v. Ironshore Spec. Ins. Co.*, 964 F.3d 804, 812
& fn. 9 (9th Cir. 2020), citing *Aydin*, *McMillin Cos. v. Am. Safety
Indem. Co.*, 233 Cal.App.4th 518, 533 n.23 (2015), and Croskey *et*

43

*al.*, *California Practice Guide: Insurance Litigation* ¶7:571.6 (The Rutter Group 2019) ("The burden is on the insured to make a prima facie showing that the third party claim potentially falls within ... an exception to that exclusion."); but see, *Vann v. Travelers Cos.*, 39 Cal.App.4th 1610, 1615-1616 (1995) (addressing "which party should bear the burden of proof" of sudden-and-accidental pollution and placing the burden on the insurer to "produce undisputed evidence precluding that possibility.")

The words "sudden" and "accidental" represent independent grounds for excluding coverage under the policy; in other words, even if a spill were accidental, coverage would be excluded if the spill were not sudden. *ACL Technologies,* 17 Cal.App.4th at 1785 ("for there to be coverage (i.e., for the exclusion not to apply), the release must be both 'sudden and accidental.'")

To satisfy its burden and establish a duty to defend, an insured must show that the tendered suit "potentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276 (1966). "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy" and may include extrinsic facts known to the insurer. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (2005).

In applying the insured's burden, "California courts have warned against misconstruing the principle of potential liability under an insurance policy. More specifically, an insured may not trigger the duty to defend by speculating about extraneous facts regarding potential liability or ways in which the third party

44

claimant might amend its complaint at some future date." *Los Angeles Lakers, Inc. v. Federal Ins. Co.*, 869 F.3d 795, 805-806 (9th Cir. 2017) (cleaned up).

Thus, while an insured may share extrinsic facts to disclose a potential for liability that would be covered, without extrinsic facts an insured's "speculation that the City will allege *new facts* in its suit against the [insured] cannot satisfy the [insured's] burden of proof." *Olympic Club v. Underwriters at Lloyd's London*, 991 F.2d 497, 503 (9th Cir. 1993) (italics original). Instead, only theories "clearly supported by the facts already pled in the complaint may support a finding of potential liability" and trigger the duty to defend. *Id.*

Because of these rules, in California an insurer "need not rely on the assertions of [the insured's] own counsel about potential covered claims in determining whether it has a duty to defend." *Sony Computer Ent. America Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1021 (9th Cir. 2008) (citation omitted).

In *Sony,* this Court applied these principles in the context of a "sudden and accidental" exception. Sony had tendered to its liability insurer the defense of claims that a Playstation system suffered from a design defect that rendered it unable to play DVDs and certain games. The insurer's policy contained an exclusion for damage to "impaired property" that (like the pollution exclusion here) was subject to an exception for "sudden and accidental" damage. *Id.* at 1011. The insurer raised the exclusion and Sony responded "that the 'sudden and accidental' physical injury exception to the exclusion applies," theorizing "that because the

45

complaints allege that the freezing and locking of the discs can happen at any time and that the defects in the console generally manifest at certain time periods, the allegations 'evince [ ] the possibility that the loss of use of discs resulted from a sudden and accidental physical injury ....'" *Id.* at 1019.

Rejecting the insured's speculation, this Court in *Sony* concluded that "these allegations provide far more support for the theory that the devices deteriorated over time" so that the exclusion applied "than that each and every class member's devices experienced a sudden and accidental physical injury." *Id.* at 1019-20.

The Court then distinguished *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049 (9th Cir. 2002), where the Court had enforced a similar "sudden and accidental" exception, noting that "in [*Anthem*] extrinsic evidence in the form of diagnostic reports suggested that physical damage had occurred to the insured's product. Here, no such evidence exists." *Sony,* 532 F.3d at 1020. Noting that the insured "bears the initial burden of proving that there is a possibility that the exception to the exclusion applies," *id.* at 1020 fn. 8, this Court affirmed a summary judgment of no duty to defend, finding that the exclusion precluded defense and the "sudden and accidental injury exception ... inapplicable." *Id.* at 1020; see also, *All Green Electric, Inc. v. Security Nat'l Ins. Co.*, 22 Cal.App.5th 407, 413, 416 (2018) (no duty to defend where insured contractor merely speculated "that there were other possible reasons" for damage but offered no

46

"extrinsic facts suggesting it damaged" its work "suddenly and accidentally or otherwise.")

The same reasoning applies here. The City's state action fell within United's pollution exclusion in the first instance and the City alleged neither directly nor by implication that L.A. Terminals' decades of routine polluting had included discharges that were either "sudden" or "accidental," let alone both, within the exception to the exclusion. The burden thus fell to L.A. Terminals to share extrinsic evidence of such discharges. United repeatedly invited such evidence (3-ER-375, 380) but L.A. Terminals chose to remain silent.

Under these circumstances, and applying the basic rules, L.A. Terminals failed in its burden to show that the City's state action created a potential for liability within the "sudden and accidental" exception to the pollution exclusion. United thus correctly declined L.A. Terminals' tender.

Cases applying the pollution exclusion in defense settings bear out this conclusion. These start with *American States Ins. Co. v. Sacramento Plating, Inc.*, 861 F.Supp. 964 (E.D. Cal. 1994). There, the California EPA issued an order to a property owner addressing the business of an electroplating company that had operated at the site for decades, asserting that "chemicals either spilled/leaked from the [company's] storage tanks, were discharged to the floor from plating tanks as a result spillage [sic], or due to the dipping of parts being plated." *Id.* at 966. The property owner's insurer sued for a declaration that a pollution exclusion—the same as United's—precluded a defense. *Id.*

The district court in *Sacramento Plating* found no defense owed because "for twenty-five years toxic chemicals were regularly spilled onto the concrete floor of the plating facility." *Id.* at 969. The court so held despite evidence that three "large spills" of chemicals occurred due to unintentional overflows from storage tanks and the insured's argument that the chemicals from these spills "may have been carried into the soil below the floor—thus causing the contamination." *Id.* at 970. The court explained that "even if" these spills had been sudden and accidental, and "even if the incidents did cause some soil contamination, they only contributed to contamination caused by pollution occurring in the regular course of the plating operation." *Id.* at 971; accord, *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal.App.4th 750, 763 (2009) (noting "no duty to defend soil contamination liability claim[s] where chemical spills had occasionally occurred during the insured's electroplating procedures.")

The *Sacramento Plating* court's reasoning presaged that of the California Supreme Court, which later explained that the exception "does not extend indemnity to situations where the policyholder can do no more than speculate that some polluting events may have occurred suddenly and accidentally, or where sudden and accidental events have contributed only trivially to the property damage from pollution." *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1037 (2009); see also, *Travelers Cas. Sur. Co. v. Superior Court,* 63 Cal.App.4th 1440, 1460 (1998) ("the insured must do more than point to possible intervening events ... to support a claim for coverage under the sudden and accidental

exception" and "must show that the intervening event ... did not arise from the disposal of wastes in the ordinary course of business.")

Likewise, the court in *A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*, 57 Cal.App.4th 427, 441 fn. 11 (1997), "agree[d] with the alternative holding in [*Sacramento Plating*] that the 'sudden and accidental' exception to the pollution exclusion does not apply where an insured pollutes the environment as part of its regular business practice by repeatedly discharging contaminants in the same manner on a daily basis over several years."[7]

The underlying allegations here likewise allege nothing more than periodic and ongoing leaks, spills, discharges, etc., in the insureds' ordinary business operations over many decades. The City's state action specifically averred, for example, that:

- The defendants operated a "marine chemical terminal and storage facility" that "involved transportation of certain hazardous materials ... that leaked from storage tanks, pipes, spilled or were disposed of on the ground, into the soil, and seeped into the groundwater" (3-ER-413, ¶18);

- These "marine chemical terminal, storage and handling operations conducted ... during L.A. Terminals' multi-decades long tenancy at the Site premises ... are responsible for" the disputed pollution and damage (3-ER-

---

[7] *A-H Plating* disapproved *Sacramento Plating*'s separate conclusion that the insured could not receive a defense without establishing that it "actually contaminated the environment." *Id.* at 443. That point is not at issue in this appeal.

415, ¶23);

- "Since 1947, Defendants, and each of them … caused the deposit or releases of hazardous substances" (3-ER-416-417, ¶¶31, 38); and

- "The hazardous substances contamination at, on, or around the Site premises is continuing …." (3-ER-417-418, ¶¶34, 42.)

In the district court, then, United contended that the City's state action did not expose LAT/Soco to potential liability within the pollution exclusion's exception.

In is order denying dismissal, the district court rejected United's view that "the City's allegations of gradual, long-term pollution demonstrate that the environmental contamination was not sudden," reasoning that "allegations of historic pollution do not foreclose the possibility that the alleged property damage was caused, at least in part, by a sudden release of contaminants." (1-ER-41.) Incorporating this ruling into its summary-judgment order (1-ER-22), the court opined: "That the contamination allegedly occurred over decades does not foreclose the possibility that LAT's alleged contribution to the contamination could have been 'sudden.'" (*Id.*)

In so ruling, the district court skipped over this Court's admonition that, first, "the insured must show a potential for coverage" and then, once United showed that the pollution exclusion applied, "the burden shifts back to the [insured] to prove that an exception to the exclusion applies, such that the insurer owed a duty to defend." *Zurich Am. Ins. Co.*, 964 F.3d at 812; see,

*Sony,* 532 F.3d at 1020 fn. 8 (insured bears "burden of proving that there is a possibility that the exception to the exclusion applies").

The district court's analysis was flawed because the court asked whether the facts alleged by the City "foreclose[d] the possibility" that discharges were sudden and accidental. Possibilities do not trigger a duty to defend. The proper analysis asks whether the facts alleged or reasonably inferable from those alleged would support an amendment alleging that the discharges were sudden and accidental. *Los Angeles Lakers,* 869 F.3d at 805. California courts have drawn a line between reasonable inferences from alleged facts and speculation about facts not alleged. *See, e.g.*, *Friedman Prof. Mgt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal.App.4th 17, 34-35 (2004) ("An insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage."); *Olympic Club*, 991 F.2d at 503 (rejecting "speculation that [plaintiff] will allege *new facts* in its suit against the [insured]"). The district court came down on the wrong side of that line.

The City's complaint alleged that pollution has been ongoing for more than 70 years ("since 1947," 3-ER-416, ¶31) as a result of leaking tanks, spills, and discharges that allowed pollutants to seep into the soil and groundwater. One cannot reasonably infer from those facts that LAT/Soco were exposed to potential liability because the "discharge dispersal, release, or escape" of the pollutants was "sudden and accidental."

51

The district court's conjecture about an unstated "possibility" paralleled the contention this Court rejected in *Sony,* where the insured speculated that the underlying "allegations 'evince [ ] the possibility that the loss of use of discs resulted from a sudden and accidental physical injury ….'" but offered no "extrinsic facts suggesting" such damage "suddenly and accidentally or otherwise." 532 F.3d at 1019; see *State of California*, 45 Cal.4th at 1037 (sudden-and-accidental exception does not apply "where the policyholder can do no more than speculate"); *Travelers,* 63 Cal.App.4th at 1460) ("the insured must do more than point to possible intervening events ... to support a claim for coverage under the sudden and accidental exception").

Instead, California law is clear "that the 'sudden and accidental' exception to the pollution exclusion does not apply" where the insured "repeatedly discharge[es] contaminants" for decades. *A-H Plating,* 57 Cal.App.4th at 441 n. 11. This is true where spills—even if sudden—"only contributed to contamination caused by pollution occurring in the regular course of the … operation." *Sacramento Plating,* 861 F.Supp. at 970-71; see, *State of California*, 45 Cal.4th at 1037 (exception does not apply where "sudden and accidental events have contributed only trivially"); *Travelers,* 63 Cal.App.4th at 1460 (insured "must show that the intervening event ... did not arise from the disposal of wastes in the ordinary course of business.")

Here, nothing in the City's state complaint—which alleged only decades of ongoing pollution in the ordinary course of the insureds' business operations—alleged or implied "sudden and

accidental" discharges within the exception to the pollution exclusion. L.A. Terminals and its counsel refused to provide any extrinsic facts, as invited, and stonewalled United's efforts to uncover such facts. (E.g., 2-ER-242-246 [Montevideo].) The district court erred by relieving L.A. Terminals of its burden "to make a prima facie showing that the third party claim potentially falls within ... an exception to that exclusion." Croskey *et al.*, ¶7:571.6.

United therefore respectfully asks the Court to reverse the judgment as to LAT/Soco's first claim with directions to adjudge and declare that United owed no duty to defend the City's state action as initially tendered.

## 2. The district court erroneously ruled that United's offer to defend later claims of sudden and accidental pollution was legally inadequate.

The evidence showed that, when LAT/Soco tendered pleadings from the underlying federal action alleging unadorned "sudden and accidental" pollution, United agreed to defend them in that action and in the City's state action though experienced pollution-defense trial counsel. (Summary, *supra*, pp. 17-18.) They rejected United's proffer and, in their second claim, sought a declaratory judgment they were instead entitled to independent counsel. (3-ER-560.) Their third claim sought damages for failing to pay independent counsel, Mr. Montevideo at Rutan & Tucker. (3-ER-562.) The issue, then, was whether United's offer to defend through attorney Brydon but not attorney Montevideo was legally proper.

A "tender of defense is an offer by policyholder to the insurer to allow the insurer to defend the policyholder in a lawsuit." *Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir. 1995). Under California law, an "insurer's duty to defend is a continuing duty that may be assumed any time before final judgment." *Tibbs v. Great American Ins. Co.,* 755 F.2d 1370, 1375 (9th Cir. 1985). To perform the duty the insurer must "employ competent counsel to represent the assured," *Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 882 (1973), that is, "the mounting and funding of a defense." *Buss v. Superior Court*, 16 Cal.4th 35, 46 (1997). By contract "[a]n insurer has the right to control a defense." *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal.App.4th 23, 31 (2015).

An offer to perform a contractual duty, even when the offeror reserves its rights, satisfies an ongoing contractual duty. Cal. Civ. Code §1485 ("An obligation is extinguished by an offer of performance ..."); *id.* §1494; *Montano v. City of South Gate*, 13 Cal.App.3d 446, 449 (1970) (obligation extinguished where "[d]efendant's tender was not unconditional, but it contained no improper condition.") United's offer properly reserved rights because, under California law, insureds have "no right to a defense free of any reservation of rights." *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*, 482 F.Supp. 830, 837 (N.D.Cal. 1979). In the district court, United's opposition therefore requested judgment in its favor on LAT/Soco's second and third claims, under *Cool Fuel, Inc.*, 685 F.2d at 311.

The district court nonetheless ruled that LAT/Soco were contractually entitled to control the defense and demand attorney

Montevideo, such that United had breached. (1-ER-23.) The court's three grounds are refuted below.

### A. The district court mistakenly applied the 1946 decision in *O'Morrow* to find that United owed a duty to provide independent counsel because United insured both the plaintiff and the defendant.

The district court ruled that United's "agreement to defend the City and [LAT/Soco]—adverse parties in the underlying litigation—created an untenable conflict of interest necessitating the appointment of independent counsel," reasoning that such a conflict exists "where the insurer insures both the plaintiff and the defendant." (1-ER-10-11, citing *O'Morrow,* 27 Cal.2d at 799.) The district court mistakenly relied on *O'Morrow*.

In *O'Morrow*, an insurance company with "complementary policies" covered both drivers in an accident. *Id*. at 795-796. The drivers sued each other and the court decided that public policy barred insurer control over the suit even though "the insurers seek only to direct the respective defenses of the parties." *Id*. at 798. The court reasoned that "the issues of negligence and *contributory negligence* cannot be separated" such that the insurer had "a pecuniary interest" in "conducting the litigation that neither party recovers against the other." *Id*. (italics added).

The key to the 1946 decision in *O'Morrow* was thus "contributory negligence," the outmoded rule of tort law whereby "all recovery" for injured parties was barred whenever their "negligent conduct has contributed as a legal cause in any degree

to the harm suffered." *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 808 (1975) (abandoning rule and replacing it with a "system of comparative negligence, which assesses liability in direct proportion to fault.")

The old rule incentivized the insurer in *O'Morrow* to direct the cases such that each insured was found 1% negligent, such that neither would recover and the insurer would pay nothing. In that setting, an "insurer lacks an economic motive for a vigorous defense" and so it "may not compel the insured to surrender control of the litigation." *Tomerlin v. Canadian Indem. Co.*, 61 Cal.2d 638, 648 (1964), citing *O'Morrow*. After the 1975 decision in *Li,* however, an insurer can "only avoid liability by establishing that a particular insured had no responsibility … not that each of its insureds was partially responsible for the loss." *Federal Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th at 46-47, distinguishing *O'Morrow*. The court in *MBL, Inc.,* thus found *O'Morrow* inapplicable because an insurer now must indemnify both insureds "and thus would have no incentive to shift liability among them." *Id.* at 47. On this point, *O'Morrow* is legally moot. [8]

---

[8] The district court's dismissal order also incorrectly cited *Centex Homes*, 237 Cal.App.4th at 28, as following the *O'Morrow* rule. (1-ER-44, 12:9-14.) The order quoted not the holding in *Centex* but instead the *Centex* court's account of the insured's argument that the court then rejected. 237 Cal.App.4th at 31-32 (concluding the insured's contentions "do not support its claim of a conflict," noting that the insured offered "a host of allegations about how [the insurer] will control the litigation without describing how this is occurring in the underlying construction defect litigation. … As

The district court legally erred by invoking *O'Morrow* to rule that United owed independent counsel to LAT/Soco simply because United also defended the City.

**B.  The district court mistakenly disregarded evidence sufficient to support a finding that United properly segregated its claim files, as appropriate when defending adverse insureds in a lawsuit.**

In confronting an *O'Morrow* argument, the court in *MBL, Inc,* recognized an alternative ground to reject an insured's claimed right to independent counsel for adverse insureds. Concluding that an insurer's and insured's "respective interests must be analyzed to determine if they can be reconciled," 219 Cal.App.4th at 42, the court noted that the insurers had "retained different law firms to defend MBL and the other insured as well as assigned different claims adjusters to the files. These claims adjusters had no access to each others' files" and "did not discuss the claims." *Id.* at 46. But the insured produced "no evidence that the defense of either insured would have been affected in any way" and so failed to show "that the Insurers' representation of other parties in the [underlying] action gave rise to a 'significant, not merely theoretical, actual, not merely potential' conflict of interest." *Id.,* quoting *Dynamic Concepts, Inc. v. Truck Ins. Exch.* 61 Cal.App.4th 999, 1007 (1998). The *MBL, Inc.,* court thus held no right to independent counsel had been established.

Gertrude Stein famously said about Oakland, there is no there there.")

Here, as in *MBL, Inc.,* the evidence was uncontradicted that United hired different law firms to defend the City and LAT/Soco (3-ER-528 [fact 32]), and "right after" United "agreed to defend" LAT/Soco in 2019, "the claims were separated" and "were broken down into four separate claims people"—two coverage, two defense—with segregated files. (3-ER-400) Thereafter "there was no communication between any of the four adjusters regarding any– any of this–this case, any aspect of the claims, any questions, any answers. Communications were completely closed." (3-ER-401.)

Conceding this evidence, the district court nonetheless found that "United did not reconcile the conflict of interest created by its defense of direct litigation adversaries"—the conflict premised on *O'Morrow*—and seized on the administrative error that had left in the file "an attorney's claims assessment report" inadvertently provided "to both new adjusters" (1-ER-25), referring to an email thread that LAT/Soco adduced with its reply brief. (2-ER-210-212.)

That thread had alerted the initial adjuster that the file appeared to have an opposing report, which she was instructed "shouldn't be in the file," with the new adjuster confirming that she would "not read and will delete to keep everything clean." (2-ER-210-211.) LAT/Soco never impeached or contradicted this evidence; indeed, they introduced it.

Absent evidence in conflict on United's proper segregation of claim files, no triable issue of fact appears and this Court may remand with instructions to direct entry of judgment for United on LAT/Soco's second and third claims. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251 (1986); *Cool Fuel, Inc.*, 685 F.2d at 311. Even if

LAT/Soco could point to conflicting evidence, it would require a jury trial, not justify a judgment for LAT/Soco as a matter of law.

### C. The district court erroneously ruled that United's reservation of rights on the narrow issue of the abruptness of the claimed pollution created a conflict of interest.

When an insurer's reservation of rights creates a conflict of interest between the insurer and insured in the defense of a third-party lawsuit, the insurer must provide independent defense counsel selected by the insured. *Previews, Inc. v. Cal. Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir. 1981) (California law); accord, *Cumis Ins. Society,* 162 Cal.App.3d 358, codified in Cal. Civ. Code §2860.

Here, United reserved the right to disclaim indemnity only to the extent the claimed pollution liability did not result from "sudden" releases, while waiving any reservation as to "accidental" releases. (2-ER-337, 342.) The pollution exclusion's exception for "sudden" releases has a "temporal connotation." *Shell Oil Co.,* 12 Cal.App.4th at 753. Thus, a "'discharge, dispersal, release or escape' of pollutants that happens gradually and continuously for years is not "sudden."" *Id.* at 754. Instead, a "sudden" release "is abrupt or immediate in nature." *Id.* at 755.

"[W]here the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action," however, "there is no conflict of interest requiring independent counsel." *Foremost Ins. Co. v. Wilks,* 206 Cal.App.3d 251, 261 (1988). Boilerplate allegations by Montevideo

and others aside, whether the pollution at issue in the underlying lawsuits was "sudden," "accidental," gradual, or intentional, has nothing to do with anyone's substantive liability.

Moreover, "where the coverage issue in question relates only to the timing of damages, there is no conflict under section 2860." *MBL, Inc,* 219 Cal.App.4th at 47; accord, *Sempra Energy v. Assoc. Elec. & Gas Ins. Services Ltd.*, 473 F.Supp.3d 1052, 1065 (C.D.Cal. 2020) (no conflict "because the pleadings in the Underlying Lawsuits do not succeed or fail based on the time period of the claim"); *Hollyway Cleaners & Laundry Co. v. Centr. Nat'l Ins. Co. of Omaha*, 219 F.Supp.3d 996, 1001,1005 (C.D.Cal. 2016) (finding insurer's reservation on the "sudden and accidental" exception in pollution case not "capable of affecting the outcome of the underlying litigation"); see also *Citi Apartments, Inc. v. Markel Ins. Co.*, 2007 WL 1689013, *6 (N.D. Cal. 2007) ("reservations of rights related to the timing of [insureds'] acts [do] not create a conflict of interest entitling [an insured] to independent counsel"); accord, *Travelers Property v. Centex Homes*, 2011 WL 1225982, *9 (N.D. Cal. 2011) ("whether the damages occurred before, during, or after the policy period is a factual issue outside of counsel's control.")

Because it relates only to an issue of the abruptness of the claimed pollution, then, a reservation of rights as to "sudden" releases cannot create a conflict of interest and right to independent counsel. Conscious of this the district court here—the same district judge who authored the cited decisions in *Sempra Energy* and *Hollyway Cleaners*—conflated the exception's

"sudden" requirement with the distinct "accidental" prong. Implicitly suggesting that United had reserved both, the court observed that "United attempts to parse its reservation of rights by waiving 'accidental' while reserving 'sudden' contamination. But the Qualified Pollution Exclusion excepts 'sudden *and* accidental,' not 'sudden *or* accidental.'" (1-ER-26, fn. 4, italics added.)

In that way, the district court misunderstood the rule that "for there to be coverage (i.e., for the exclusion not to apply), the release must be both 'sudden and accidental.' " *ACL Technologies,* 17 Cal.App.4th at 1785; *Shell Oil Co.*, 12 Cal.App.4th at 752-755 (courts treat "sudden" releases and "accidental" releases as distinct concepts to avoid "redundancy"). This means that pollution that is "accidental" but not "sudden" is still excluded from coverage.

Had United reserved on the issue of "accidental" releases, it would have implicated the insured's conduct at issue in the underlying case and implicated independent-counsel rights. *Cumis,* 162 Cal App.3d at 368. But United waived the "accidental" requirement and thus did not implicate the nature of LAT/Soco's conduct.

Having first mistakenly conflated the exceptions for "sudden" with "accidental" pollution, the district court compounded the error by ruling that United could not waive reservations as to the exception for "accidental" pollution. An insurer may validly waive reservations that otherwise might trigger the insured's right to independent counsel. As stated in

61

*Swanson v. State Farm Gen. Ins. Co.*, 219 Cal.App.4th 1153, 1164 (2013), "once [the insurer] waived its *Cumis*-triggering defenses …, the disqualifying conflict of interest no longer existed" and the insurer "at any time could appoint counsel of its choice to represent [insured] and [insurer]." At that point the insurer has no "obligation to allow [the insured] to control the litigation or an obligation to pay the attorneys' fees of [the insured's] *Cumis* counsel" *Id.* at 1160.

The district court thus erred as a matter of law by ruling that United's narrow reservation of rights as to "sudden" pollution gave LAT/Soco the right to independent counsel. United properly offered to perform its defense duty through counsel (Brydon) far more experienced than LAT/Soco's (Montevideo) at trying pollution cases. As a matter of law, LAT/Soco's rejection of United's proper tender of performance relieved United of any further duty. Cal. Civ. Code §1485. United therefore asks this Court to reverse with instructions to direct entry of judgment for United on LAT/Soco's second and third claims.

3. **The district court erroneously ruled that LAT/Soco owed no duty to mitigate their defense-cost damages by accepting a full defense proffered by another insurer**.

Even if United had breached its duty to defend, it pleaded the defense of failure to mitigate damages. (3-ER-537 [defense 4].) A "plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which

could have been thus avoided." *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993). Such a plaintiff must "do everything reasonably possible to negate his own loss and thus reduce the damages for which the other party has become liable." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 460 (1990). When an insurer breaches its duty to defend, then, "the insured must make reasonable efforts to mitigate the resulting damages." Croskey, *et al.*, ¶12:631.1, Ch. 12B-D.

Here, LAT/Soco unreasonably failed to mitigate by declining AIG's offer of defense. As discussed in the statement of facts above, pp. 11-12, LAT/Soco requested and AIG extended a full, unqualified offer of defense through LAT/Soco's chosen defense firm.

But the district court rejected United's mitigation defense finding that nothing "requires [LAT/Soco] to accept excess insurance, in this case to their detriment, to cover the costs [they] incurred because United breached," noting that payment of defense expense "would erode [AIG's] coverage limits" of $15 million. (1-ER-30.)

The district court legally erred. Where, as here, an excess insurer "concededly had an independent obligation to defend" and pays the insured's defense costs, the insured "cannot show it suffered any contract damages" against a primary insurer that had disclaimed, even if the disclaimer was legally incorrect. *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal.App.4th 1078, 1089 (2005) (citation omitted). This is so even where—as with AIG—the excess insurance is " 'self-liquidating,' " that is, reduces limits by defense costs. *Id.* at 1094. And this is so especially where

63

the insured does "not plead or prove it was subject to other third party claims exhausting [those excess] policy limits." *Id.*

Here, too, LAT/Soco offered no evidence that AIG's $15 million in excess limits—even if eroded by defense costs—faced risk of exhaustion.[9] The district court should have thus ordered summary judgment for United, as requested under *Cool Fuel, Inc.*, 685 F.2d at 311.

Even had United had not requested summary judgment, moreover, whether LAT/Soco reasonably should have accessed that $15 million for expenses presented a triable issue. "Under California law, whether [a plaintiff] reasonably mitigated its damages is a question of fact." *MAG Aerospace Ind., LLC v. Precise Aerospace Mfg., Inc.*, 856 Fed.Appx. 709, 711 (9th Cir. 2021) (cit. omitted); *Green v. Smith*, 261 Cal.App.2d 392, 396-97 (1968) ("whether an injured party acted reasonably to mitigate damages is a matter to be determined by the trier of fact and that the scope of review on appeal is circumscribed by the 'any substantial evidence' rule."). Substantial, indeed undisputed, evidence would have supported a jury finding that LAT/Soco unreasonably failed to mitigate by declining AIG's offer of defense.

United therefore asks this Court to reverse and vacate the judgment with instructions either to enter judgment for United on its mitigation defense or to permit a jury to determine United's defense of failure to mitigate.

---

[9] Although not in this record, AIG's actual share of the underlying tentative settlement is $750,000.

4. **The district court erred by denying United a right to trial by jury on the contested issue of damages**.

The "basic measure of damages" for an insurer's "breach of the duty to defend" is "the cost incurred in defense of the underlying suit." *Amato v. Mercury Cas. Co.*, 18 Cal.App.4th 1784, 1794 (1993). LAT/Soco applied the label "declaratory relief" to some of its claims, but it sought traditional legal relief—money damages for United's alleged breaches of contractual rights. The Seventh Amendment entitled United to a jury trial on all disputed issues. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504-09 (1959); *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987) ("A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy. Defendant's contractual claim to benefits, the source of Transamerica's case, is clearly a legal one.").

When a case involves both legal and equitable claims, the Seventh Amendment requires legal claims to be tried to a jury *first*; "the district court may consider equitable relief . . . only 'after the jury renders its verdict.'" *SEC v. Jensen*, 835 F.3d 1100, 1111 (9th Cir. 2016), citing *Beacon Theatres*.

Here, LAT/Soco requested declaratory relief, but also sought to recover damages, specifically, the dollar amounts of defense invoices it had paid. Through briefing ordered by the district court, United presented numerous challenges to the amount of damages claims, including on grounds of Montevideo's lack of experience, rampant block billing, duplicative staffing, and the

like. (2-ER-173-192.) The district court acknowledged these objections at the hearing and said the court would make adjustments accordingly. (2-ER-111, 10:13, 112:17-19; 111:15-23; 115:15-21.) But the court made no adjustments, denied United a jury trial, and issued what amounts to an injunction or a decree of specific performance—an order to pay invoices of LAT/Soco's counsel in full.

That order violated the Seventh Amendment by prioritizing equitable relief over legal relief. The district court justified its approach by relying on *American Motorists,* 68 Cal.App.4th 864. But that reliance was wrong for three reasons.

First, the Seventh Amendment does not apply to state proceedings. *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 432 (1996); *Minneapolis & S. L. R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916). *American Motorists* addressed California procedures, which differ. In California, a judge tries equitable issues first, then submits remaining legal claims to a jury. *Nationwide Biweekly Admin., Inc. v. Superior Ct*., 9 Cal.5th 279, 317 (2020). No such procedure could satisfy the Seventh Amendment, which obligates a court to submit factual disputes about the amount of damages to a jury *first*. The district court ignored this critical flaw in analogizing to *American Motorists* and California law.

Second, the *American Motorists* court did not affirm an order like the district court's here. That court did not address a claim for breach of contract like LAT/Soco's here, but instead *an insurer's* claim for "reimbursement for allegedly excessive or unnecessary fees and costs," which California treats as "a claim for *equitable*

restitution, not a claim for damages." 68 Cal.App.4th at 874 (italics original). *American Motorists* has thus never been cited by any court for the reasons adopted in the district court. But *American Motorists* has been found inapplicable where, like here, an insured seeks "to recover legal damages for [the insurer's] breach of the parties' insurance contract." *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 5909257 *1 (N.D. Cal. 2009).

Third, the district court relied entirely on a portion of *American Motorists* that simply recounted, as part of the law of the case, an earlier, otherwise non-citable decision in the same litigation. (1-ER-8, 4:5-11, quoting from *Montrose Chem. Corp. v. American Motorists Ins. Co.*, 16 Cal.Rptr.2d 516 (1993).) The California Supreme Court had granted review of the earlier decision, which "had the effect of depublishing" it. Eisenberg, et al., *Cal. Practice Guide: Civil Appeals & Writs* (The Rutter Group 2022), Ch. 11-F, ¶11:172; *Aeroquip Corp. v. Aetna Cas. & Sur. Co.*, 26 F.3d 893, 894 n.1 (9th Cir. 1994) ("depublication means [the decision] cannot be cited in support of the proposition for which it stands."); accord, *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 n. 8 (9th Cir. 2005). The district court had no license to rest its decision on depublished authority.

Should any aspect of the district court's rulings on liability survive, this Court should reverse the judgment with directions to proceed to a jury trial on LAT/Soco's claim for damages.

67

# VI. CONCLUSION

Of the many issues addressed above, the only issues that this Court must reach to reverse in full are the first two.

The first is the district court's partial summary judgment on LAT/Soco's first claim declaring that United owed a duty to defend L.A. Terminals against the City's state action initially tendered. This Court should reverse because the district court mistakenly switched the threshold burden at law to establish a duty to defend under the sudden-and-accidental exception to the pollution exclusion. The court adopted L.A. Terminals' speculation about unpleaded facts in the tendered complaint and placed a burden on United to disprove the speculated facts, in direct violation of California law. This Court should correct that error and reverse.

That reversal would lead to the district court's partial summary judgment on LAT/Soco's second and third claims that United had breached its contractual duties both in failing to defend the City's initial state action and—oddly enough—in tendering performance of United's duty to defend the later tendered pleadings that satisfied the sudden-and-accidental exception. The district court's rationale for finding the latter breach—that United had waived its contractual right to control the defense and appoint counsel—amounted to a series of legal gymnastics unmoored to solid California law. This Court should reverse this ruling, too, and find that United's proper tender of performance satisfied its duty to defend the new pleadings as a matter of law.

68

Such rulings would render United's arguments about damages—the trial court erred in rejecting as a matter of law the defense of failure to mitigate and the trial court improperly refused United a jury on the amount of damages recoverable—entirely academic, so that this Court need not reach them.

In the event the Court does reach them, the Court nonetheless should reverse based on the undisputed evidence supporting United's complete defense of failure to mitigate and direct entry of judgment for United. At a minimum, the Court should reverse for trial on United's mitigation defense.

If the judgment survives all of the points described above, the Court should reverse with directions to afford United a trial by jury on the question of damages.

Respectfully submitted,

NIELSEN KATIBAH LLP

/s/ James C. Nielsen

Attorneys for Defendant and Appellant
UNITED NATIONAL INSURANCE COMPANY

March 20, 2024

## VII.   STATEMENT OF RELATED CASES.

There are no known related cases under Circuit Rule 28-2.6.

## VIII. CERTIFICATE OF COMPLIANCE.

Per Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned certifies that Appellant's Opening Brief is proportionally spaced, has a type face of 14 points or more, and contains 13,838 words.

/s/ James C. Nielsen

Attorney for Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I arranged to electronically file the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ James C. Nielsen

March 22, 2024