# No. 23-55483

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

L.A. TERMINALS, INC., *and* SOCO WEST, INC.
*Plaintiffs and Appellees,*

*vs.*

UNITED NATIONAL INSURANCE COMPANY,
*Defendant and Appellant.*

———————————————

On Appeal from a Summary Judgment
of the District Court, Central District of California,
Action No. 23-55483
The Honorable Otis D. Wright, II

———————————————

APPELLANT'S REPLY BRIEF

———————————————

JAMES C. NIELSEN
DANIEL N. KATIBAH
STUART E. JONES
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
(415) 693-0900
Facsimile (415) 693-9674

*Attorneys for Defendant and Appellant*
UNITED NATIONAL INSURANCE COMPANY

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................... i

TABLE OF AUTHORITIES .................................................. iv

ARGUMENT ........................................................................ 8

1.    The City's first amended complaint created no potential liability for sudden-and-accidental pollution. ........................................................ 8

    A.    The burden-shifting fallacy. ......................... 8

    B.    The "magic words" fallacy. ......................... 10

    C.    The fallacy that lawsuits alleging decades of routine pollution implicate the sudden-and-accidental exception. ................. 12

    D.    The hindsight fallacy. ................................ 15

    E.    The fallacy that United's defense of the City against L.A. Terminals required defense of L.A. Terminals against the City. ......... 16

    F.    The "single cent" fallacy. ......................... 19

2.    LAT/Soco fail to refute United's proper offer to defend the City's second amended complaint that alleged sudden-and-accidental pollution. ........ 20

    A.    LAT/Soco fail to justify the district court's mistaken reliance on *O'Morrow* to find entitlement to independent counsel. ......... 21

B.   LAT/Soco fail to refute United's proper
     segregation of claim files.                    24

C.   LAT/Soco fail to establish any conflict under
     the *Cumis* rule.                               27

D.   LAT/Soco's theory of forfeiture goes
     nowhere.                                        29

3.   LAT/Soco cannot justify their failure to mitigate
     damages.                                        32

4.   LAT/Soco fail to justify denial of a trial by jury on
     damages.                                        36

## TABLE OF AUTHORITIES

Cases

*ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.,*
17 Cal.App.4th 1773 (1993)                                    14, 28

*A-H Plating, Inc. v. American Nat'l Fire Ins. Co.,*
57 Cal.App.4th 427 (1997)                                        12-13

*American States Ins. Co. v. Sacramento Plating, Inc.,*
861 F.Supp. 964 (E.D.Cal.1994),
aff'd, 99 F.3d 1145 (9th Cir. 1996)                              12-13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)                                                 26

*Brandt v. Superior Ct.,*
37 Cal.3d 813 (1985)                                                36

*Centex Homes v. St. Paul Fire & Marine Ins. Co.,*
237 Cal.App.4th 23 (2015)                                           23

*Cool Fuel, Inc. v. Connett,*
685 F.2d 309 (9th Cir. 1982)                                        26

*Dynamic Concepts, Inc. v. Truck Ins. Exch.,*
61 Cal.App.4th 999 (1998)                                    26, 27, 29

*Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.,*
130 Cal.App.4th 1078 (2005)                                      34-35

*Emplrs. Ins. of Wausau v. Granite State Ins. Co.,*
330 F.3d 1214 (9th Cir. 2003)                                       31

*Federal Ins. Co. v. MBL, Inc.,*
219 Cal.App.4th 29 (2013)                                     22, 24-27

iv

*Fed. Trade Com'n v. Enforma Natural Products, Inc.*,
362 F.3d 1204 (9th Cir. 2004) ... 36

*Gray v. Zurich Ins. Co.*,
65 Cal.2d 263 (1966) ... 17

*Guzman v. Polaris Industries Inc.*,
49 F.4th 1308 (9th Cir. 2022) ... 36

*Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*,
482 F.Supp. 830 (N.D.Cal.1979) ... 20

*Hydro Systems, Inc. v. Continental Ins. Co.*,
929 F.2d 472 (9th Cir. 1991) ... 9

*Intergulf Dev. LLC v. Super. Ct.*,
183 Cal.App.4th 16 (2010) ... 30=31

*James 3 Corp. v. Truck Ins. Exch.*,
91 Cal.App.4th 1093 (2001) ... 23

*J.R. Simplot v. Chevron Pipeline Co.*,
563 F.3d 1102 (10th Cir. 2009) ... 37

*Li v. Yellow Cab*,
13 Cal.3d 804 (1975) ... 21-22

*Los Angeles Lakers, Inc. v. Federal Ins. Co.*,
869 F.3d 795 (9th Cir. 2017) ... 11, 18

*MAG Aerospace Ind., LLC v. Precise Aerospace Mfg., Inc.*,
856 Fed.Appx. 709 (9th Cir. 2021) ... 33

*Montano v. City of South Gate*,
13 Cal.App.3d 446 (1970) ... 20

*Montrose Chemical Corp. v. Superior Court*,
6 Cal.4th 287, 295 (1993) ... 8-9

v

*Oil Base, Inc. v. Continental Cas. Co.*,
271 Cal.App.2d 378 (1969)     30-31

*Olympic Club v. Those Interested Underwriters
at Lloyd's London*,
991 F.2d 497 (9th Cir. 1993)     11, 17

*O'Morrow v. Borad*,
27 Cal.2d 794 (1946)     21-24

*Pacific Group v. First State Ins. Co,*
70 F.3d 524 (9th Cir. 1995)     10

*San Diego Navy Fed. Credit Union v Cumis Ins. Society*,
162 Cal App 3d 358 (1984)     27, 29, 31

*Scottsdale Ins. Co. v. MV Transportation*,
36 Cal.4th 643 (2005)     9 19

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
12 Cal.App.4th 715 (1993)     14, 15, 19, 28, 29

*Sony Computer Ent. America Inc. v. Am. Home Assur. Co.*,
532 F.3d 1007 (9th Cir. 2008)     13, 17, 18

*State of California v. Allstate Ins. Co.*,
45 Cal.4th 1008 (2009)     13

*St. Paul Fire & Marine Ins. Co. v. Weiner*,
606 F. 2d 864 (9th Cir. 1979)     23

*Stroughter v. State Farm Fire & Cas. Co.*,
2004 WL 2538776 (Cal.App. unpubl. 2004)     30

*The Upper Deck Co., LLC v. Federal Ins. Co.*,
358 F.3d 608 (9th Cir. 2004)     11, 16

vi

*Tibbs v. Great American Ins. Co.,*
755 F.2d 1370 (9th Cir. 1985)                                    30-32

*Tomerlin v. Canadian Indem. Co.,*
61 Cal.2d 638 (1964)                                                   22

*Travelers Cas. Sur. Co. v. Superior Court,*
63 Cal.App.4th 1440 (1998)                                           13

*Zurich Am. Ins. Co. v. Ironshore Spec. Ins. Co.,*
964 F.3d 804 (9th Cir. 2020)                                        8-9

Statutes

U.S. Const., Seventh Am.                                              36

Cal. Civ. Code §1485                                             20, 32

Cal. Civ. Code §1494                                             20, 32

Cal. Civ. Code §2860                                             27, 30

Treatises

Croskey et al., *California Practice Guide:*
*Insurance Litigation* (Rutter Group 2019)                 10, 22, 32

Plitt et al., Couch on Insurance
(3d ed. June 2024 update)                                            23

## ARGUMENT

### 1. The City's first amended complaint created no potential liability for sudden-and-accidental pollution.

LAT/Soco's answering brief claims "no serious dispute that" United's disclaimer as to the City's first amended complaint for pollution damage "constituted a breach of United's duty to defend." (AB 1.) But whether United correctly declined is the threshold issue in this appeal and United's opening brief seriously disputed any breach.

LAT/Soco respond with a volley of legal fallacies to justify a novel, erroneous judgment. United debunks each fallacy below.

### A. The burden-shifting fallacy.

Whether United owed a duty to defend the City's first amended complaint originally tendered depended on whether the facts alleged or provided potentially exposed L.A. Terminals to liability within the pollution exclusion's exception for "sudden and accidental" pollution. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). Absent such facts, an "insured" fails to carry its threshold burden to "show that the underlying claim may fall within the policy coverage." *Id.* at 300.

Because the exception restores coverage otherwise eliminated, California law treats it as a coverage provision for which the insured bears the threshold burden. *Zurich Am. Ins. Co. v. Ironshore Spec. Ins. Co.*, 964 F.3d 804, 812 & fn. 9 (9th Cir. 2020). Where an insured fails to show that the claim "may fall

within" the exception, the burden never shifts to the insurer to "prove it cannot." *Montrose,* 6 Cal.4th at 300.

LAT/Soco therefore misdirect the Court when they urge that "United has never tried to 'conclusively' prove that the City's complaint could not fall within its policy coverage." (AB 3.) LAT/Soco never satisfied the initial burden of showing the City's complaint created potential liability for sudden-and-accidental pollution. The burden never shifted.

LAT/Soco object that this rule "place[s] on Plaintiffs the burden to investigate and produce extrinsic evidence proving that the discharges were sudden and accidental." (AB 32-33.) LAT/Soco misstate their burden. Where a pleading neither alleges or implies liability for sudden-and-accidental pollution, no duty to defend arises in the first instance. *Montrose,* 6 Cal.4th at 300. The burden to then present extrinsic facts suggesting such potential—not actual—liability remains on the insured. *Zurich*, 964 F.3d at 812.

LAT/Soco similarly object that the rule unfairly requires them "to investigate and produce extrinsic evidence proving that the discharges were sudden and accidental" (AB 32) because the law really requires an *insurer* to "undertake a reasonable investigation...before denying coverage." (AB 33.) But they forget that "the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 654 (2005). Where the "initial facts" show "that coverage was not available, the insurer has "no duty to investigate the entire underlying claim." *Hydro Systems, Inc. v. Continental*

*Ins. Co.,* 929 F.2d 472, 477 (9th Cir. 1991); accord, *Pacific Group v. First State Ins. Co.,* 70 F.3d 524, 529 (9th Cir. 1995). Even so, United repeatedly invited LAT/Soco to provide facts implicating the exception to the exclusion (3-ER-375, 380), but LAT/Soco stoutly refused to respond. (2-ER-244-46, 3-ER-555.)

LAT/Soco evoke their fallacy of a shifting burden because they failed to satisfy their burden in the first instance "to make a prima facie showing that the third party claim potentially falls within ... an exception to that exclusion." Croskey et al., *California Practice Guide: Insurance Litigation* ¶7:571.6 (Rutter Group 2019).

### B.    The "magic words" fallacy.

LAT/Soco attribute to United an argument that, to implicate a duty to defend, a third-party complaint must allege the "exact 'magic words' United claimed were needed." (AB 3.) LAT/Soco retort that "an insurer cannot disclaim its duty to defend merely by pointing to a lack of magic words in the complaint" (AB 28), urging that, although the City's original complaint "did not use the exact words 'sudden and accidental,' no such magic words are required under California law." (AB 21, see AB 9-10, 29, 30.)

But United never advanced any such argument. LAT/Soco cite nothing because it never happened. United instead declined to defend the City's initial complaint because "it allege[d] continuous, long-term pollution damage arising from day-to-day business operations of various companies," not any "sudden and accidental" events. (3-ER-379.) United thus consistently

recognized (AOB 51) the proper duty-to-defend analysis, which asks whether "under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Los Angeles Lakers, Inc. v. Federal Ins. Co.*, 869 F.3d 795, 805 (9th Cir. 2017).

LAT/Soco's magic-words fallacy instead evades the line drawn by California courts between reasonable inferences from alleged facts and speculation about facts not alleged. *The Upper Deck Co., LLC v. Federal Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." [Citation omitted].)

LAT/Soco dismiss this principle, claiming that such "cases hold only that the insured cannot establish a potential for coverage by rewriting the complaint to bring fundamentally different claims against fundamentally different parties under fundamentally different and fantastical facts." (AB 36.) But speculation is *always* prohibited to claim potential liability. By suggesting that the rule permits *routine* speculation like they advance here and precludes only so-called "*fantastical*" speculation, LAT/Soco garble the rule. "Only amendments that would include new causes of action clearly supported by the facts already pled in the complaint may support a finding of potential liability." *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 503 (9th Cir. 1993).

11

LAT/Soco deploy their loud magic-words fallacy to distract from the flawed standard they propose *sotto voce*. The district court erred by finding a duty to defend the City's first amended complaint based on speculation about facts not pled.

### C. The fallacy that lawsuits alleging decades of routine pollution implicate the sudden-and-accidental exception.

"[T]he 'sudden and accidental' exception to the pollution exclusion does not apply" where the insured "repeatedly discharg[es] contaminants" for decades. *A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*, 57 Cal.App.4th 427, 441 fn. 11 (1997), concurring with *American States Ins. Co. v. Sacramento Plating, Inc.*, 861 F.Supp. 964 (E.D.Cal.1994), aff'd, 99 F.3d 1145 (9th Cir. 1996). This remains true where sudden-and-accidental spills occurred but "only contributed to contamination caused by pollution occurring in the regular course of the…operation." *Sacramento Plating,* 861 F.Supp. at 970-71.

LAT/Soco oddly attempt to distinguish *Sacramento Plating* by observing—correctly— that it referred to spills "during the regular course of the facility's operation." 861 F.Supp. at 971 (AB 37).[1] But those facts mirror the City's allegation here—pollution during the regular course of operations (chemical storage and

---

[1] LAT/Soco complain that United "ignores that later cases have criticized *Sacramento Plating*," especially *A-H Plating*. (AB 37 fn. 7.) But United expressly noted this criticism. (AOB 49 fn. 7.) More importantly, *A-H Plating* expressly embraced *Sacramento Plating*'s "alternative" holding, on which United relies. 57 Cal.App.4th at 441 fn. 11.

transport) for decades via spills, negligent handling, and leaks. (AOB 48-49.) LAT/Soco duck these facts. An "appellee waives any argument it fails to raise in its answering brief." *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015).

The reasoning in *A-H Plating* and *Sacramento Plating* harmonize with the rule that the exception "does not extend indemnity to situations where the policyholder can do no more than speculate that some polluting events may have occurred suddenly and accidentally, or where sudden and accidental events have contributed only trivially to the property damage from pollution." *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1037 (2009); see *Travelers Cas. Sur. Co. v. Superior Court,* 63 Cal.App.4th 1440, 1460 (1998).

The reasoning likewise harmonizes with *Sony Computer Ent. America Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1019-20 (9th Cir. 2008), applying the same sudden-and-accidental exception to a different property-damage exclusion, where this Court found no duty to defend based on underlying allegations that "provide … support for the theory that the devices deteriorated over time" and not "that each and every class member's devices experienced a sudden and accidental physical injury."

LAT/Soco contrast *Sony* by claiming that, "here, the City's… allegations support the possibility that the commencement of the discharges could have been sudden and accidental." (AB 34.) In debunking LAT/Soco's magic-words fallacy above, however, United showed that LAT/Soco bases its claim on prohibited speculation. This Court in *Sony* rejected an insured's speculation about

13

hypothetical sudden-and-accidental injuries to PlayStations—just as LAT/Soco speculate about hypothetical sudden-and-accidental pollution. LAT/Soco never met their burden to show that the City's first amended complaint created potential liability for sudden-and-accidental pollution.

LAT/Soco muster only that the City "alleged that LAT was *negligent* in its storing and handling of hazardous chemicals … which plainly raised the possibility that releases of those chemicals were 'sudden and accidental.'" (AB 36; see also 21, 28-29.) LAT/Soco thus invite the Court to read "sudden" as coextensive with "accidental," both referencing negligent "events without any temporal limitation." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 752-753 (1993). But courts cannot do that without "making 'sudden' and 'accidental' redundant," an error avoided when "sudden" is properly read to include "a temporal element." *Id*. at 754-755.

LAT/Soco's theory that allegations of *negligence* imply "sudden" events presents a *non sequitur* and requires impermissible conjecture. Courts "cannot reasonably call 'sudden' a process that occurs slowly and incrementally over a relatively long time no matter" whether the pollution was simultaneously "accidental." *Id*. at 754 (three decades of pollution not "sudden"). Because the exception requires polluting events to be "both 'sudden and accidental,'" *ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal.App.4th 1773, 1786 (1993), it cannot apply to the City's allegations.

14

Finally, seizing on the *Shell* observation that "a sudden and accidental discharge of a dangerous pollutant could continue unabated for some period because of a negligent failure to discover it,"12 Cal.App.4th at 756, LAT/Soco theorize that the allegation "that some pollution may have occurred over decades does not foreclose the possibility that the initial discharge or discharges were 'sudden' ...." (AB 31.) The City, however, alleged that *all* the pollution occurred over decades and implied no potential liability for "sudden" releases. LAT/Soco's unremitting speculation adds nothing.

At bottom, LAT/Soco invite this Court to create a new rule under which any lawsuit alleging long-term pollution would implicate an abstract possibility of sudden-and-accidental pollution. LAT/Soco's rule would create a slippery slope down which virtually every lawsuit alleging pollution damage would slide, effectively rendering the pollution exclusion a nullity in a duty-to-defend setting. This Court should reject their invitation and instead apply the settled rule that no duty to defend arises based on speculation about sudden-and-accidental pollution. The district court's adjudication that United owed a duty to defend against the City's first amended complaint should be reversed.

## D.  **The hindsight fallacy**.

LAT/Soco's brief relentlessly urges that the City's eventual amendment "to include [sudden-and-accidental pollution] just underscores that United had a duty to defend *from the outset*." (AB 3, italics added; see 15, 21, 29, 32, 36.)

To be sure, the City's eventual *second* amended complaint expressly alleged boilerplate "sudden and accidental" pollution had occurred. (3-ER-529 [fact 33].) But that amendment legally said nothing about the potential for covered liability under the City's *first* amended complaint. The "determination of potential coverage is made *at the time the lawsuit is tendered* to the insurance company." *The Upper Deck Co.,* 358 F.3d at 612-613 (italics added). "In the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage." *Id.* at 613.

LAT/Soco employ this hindsight fallacy to misdirect the Court by urging affirmance on the erroneous theory that the City's later amendment relates back to show covera

ge "from the outset."

### E. The fallacy that United's defense of the City against L.A. Terminals required defense of L.A. Terminals against the City.

LAT/Soco claim "no serious dispute" that United owed a duty to defend the City's first amended complaint because United agreed to defend their "adversary in the underlying litigation, the City of Los Angeles … *under the exact same facts*." (AB 1, italics added.)

But the facts were not the same. United agreed to defend the City because L.A. Terminals had dubiously alleged in two pleadings that the City was liable for "sudden and accidental"

pollution. This insurance-inspired boilerplate irrelevant to substantive liability appears to have been made up by L.A. Terminals itself. The City's first amended complaint against L.A. Terminals had not alleged facts from which such liability could be inferred and L.A. Terminals' own conclusory allegation omitted particulars.

United had thus been drawn to defend the City against L.A. Terminals' counterclaims because an "insurer must defend even a groundless, false or fraudulent claim" when the claim, if true, would be covered. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 274 (1966).

That L.A. Terminals' fact-free allegations against the City appeared "groundless" made no difference. Even groundless allegations if undefended can fuse into a judgment.

But United's duties as to the City's complaint were not governed by L.A. Terminals' own unsupported allegations *against* the City—as LAT/Soco suggest on appeal. LAT/Soco run afoul of the principle that an insurer "need not rely on the assertions of [the insured's] own counsel about potential covered claims in determining whether it has a duty to defend." *Sony*, 532 F.3d at 1021. When determining when an insurer must defend against a complaint, only theories "clearly supported by the facts already pled in the complaint may support a finding of potential liability." *Olympic Club,* 991 F.2d at 503. By "pled in the complaint," this Court referred to the complaint against the insured, not to the insured's own allegations in some other pleading—allegations that amount to nothing more than "assertions of [the insured's] own

17

counsel" entitled to no weight under *Sony,* 532 F.3d at 1021; see also, *Los Angeles Lakers,* 869 F.3d at 805-806.

United nonetheless investigated LAT/Soco's allegation by asking their counsel, Mr. Montevideo, for the factual basis of his allegation. (3-ER-375.) Mr. Montevideo ignored the request and, when pressed in deposition, threatened to "terminate this deposition." (2-ER-244.) The allegation by L.A. Terminals' own counsel that the City was liable for sudden-and-accidental pollution, absent extrinsic evidence, added nothing to the City's separate complaint and could not trigger a duty to defend.

On appeal, LAT/Soco object to their burden to "produce extrinsic evidence"—as distinct from speculation—"proving that the discharges were sudden and accidental," professing that L.A. Terminals "did not cause the pollution and had no knowledge of its occurrence." (AB 32-33.) But this confirms that Mr. Montevideo lacked evidence and that his conclusory allegation against the City was groundless from the beginning. LAT/Soco similarly admit that their "strategy for defending" the City's complaint included counterclaims with these boilerplate allegations "that the purported contamination was 'caused by various sudden and accidental releases …'" (AB 9.) From the beginning, Mr. Montevideo's allegation against the City was strategic, not substantive.

Because the law did not require United to "rely on the assertions of [the insured's] own counsel," *Sony*, 532 F.3d at 1021, Mr. Montevideo's conclusory assertion in a counterclaim could not create a duty to defend the City's first amended complaint. No

facts alleged by the City or provided by Mr. Montevideo showed that L.A. Terminals might have been liable for sudden-and-accidental pollution.

## F. The "single cent" fallacy.

LAT/Soco pepper their brief with rhetorical broadsides that, "to this day, United still has not paid a single cent of the more than six years of defense costs submitted for payment" (AB 2; see also 6, 26.)

LAT/Soco omit that the procedure for an insurer to defend while contesting that it owes any duty is to preserve the right to reimbursement. An "insurer, having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed." *MV Transportation*, 36 Cal.4th at 657. That remedy, however, contemplates an insured from whom reimbursement can be had. Here, LAT/Soco were and remain obsolete shell corporations within the Berkshire Hathaway family (AB p.i; 2-ER-120, 176, 215, 3-ER-546) and during these proceedings predictably petitioned for bankruptcy. (2-ER-51-90.) The *MV Transportation* procedure was never available.

Instead, to preserve this Court's jurisdiction to decide the issues, the available procedure was to permit entry of judgment, to secure the judgment, and to appeal. The district court declined LAT/Soco's attempts to obtain a money judgment, instead awarding equitable relief. (1-ER-3.) Under F.R.Civ.P. Rule 62(b), United proposed to post full-value security of over $7.4 million to

protect LAT/Soco. (2-ER-94.) United has sought only to assure a meaningful appeal.

## 2. LAT/Soco fail to refute United's proper offer to defend the City's second amended complaint that alleged sudden-and-accidental pollution.

An offer to perform a contractual duty, even under a reservation of rights, satisfies an ongoing contractual duty. (AOB 54, citing Cal. Civ. Code §§1485, 1494, *Montano v. City of South Gate*, 13 Cal.App.3d 446, 449 (1970).) United explained that LAT/Soco, like any insured, had "no right to a defense free of any reservation of rights." (*Ibid.,* quoting *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*, 482 F.Supp. 830, 837 (N.D.Cal.1979).) LAT/Soco neither dispute nor mention these principles. Nor do LAT/Soco contest the record evidence that, when LAT/Soco tendered pleadings alleging unadorned "sudden and accidental" pollution, United agreed to defend. (AOB 17-18, 53.) Nor that United engaged experienced pollution-defense trial counsel, John Brydon, to do so. (*Ibid.*)

LAT/Soco concede these points by failing to respond. *Dreyer*, 804 F.3d at 1277. Accordingly, whether United's tender of performance instead breached the contract turns on whether United's offer to defend LAT/Soco through trial attorney Brydon was legally proper. If it was proper, the district court's finding of breach must be reversed with directions to enter judgment for United.

**A.  LAT/Soco fail to justify the district court's mistaken reliance on *O'Morrow* to find entitlement to independent counsel.**

The district court found United's offer to defend LAT/Soco through Mr. Brydon was inadequate and thus in breach because, the court concluded, LAT/Soco were entitled to independent counsel. The district court found this entitlement on a theory of "direct conflict" drawn from *O'Morrow v. Borad*, 27 Cal.2d 794 (1946), where the court had invoked public policy to bar an insurer from defending mutual insureds in cross-suits against the other. *Id*. at 798.

*O'Morrow* so held because "the issues of negligence and contributory negligence cannot be separated," and "[t]hese issues require the presentation of evidence by means of the same witnesses," such that even by hiring different counsel for each insured "the companies would have access to all information in regard to the entire case." *Id*. Because, in turn, the insurers had agreed "to pay any judgment rendered in favor of either the plaintiff or the cross-complaint" they "have a pecuniary interest in effecting a balance between the litigants and so conducting the litigation that neither party recovers against the other." *Id*.

Three decades later, in *Li v. Yellow Cab*, 13 Cal.3d 804 (1975), California replaced this contributory-negligence rule undergirding *O'Morrow* with a pure comparative-fault regime. *O'Morrow*'s vitality thus "has been questioned" because the basis for its holding—that "contributory negligence was a complete bar to recovery, and therefore an insurer could avoid liability

21

altogether if each party was found partly at fault"—is "no longer true under modern comparative negligence law." Croskey, ¶7:790a, Ch. 7B-K, citing *Federal Ins. Co. v. MBL, Inc.,* 219 Cal.App.4th 29, 46-47 (2013) (noting that *O'Morrow* is now moot because an insurer defending both sides can "only avoid liability by establishing that a particular insured had no responsibility for the pollution at issue, not that each of its insureds was partially responsible for the loss" so the insurer "would have no incentive to shift liability among" its insureds). By adopting *O'Morrow*'s outcome while ignoring its rationale, the district court found a right to independent counsel based on a doctrine obsolete for half a century.

That was error. Rather than confront the error, LAT/Soco incorrectly claim the key to *O'Morrow* was *not* contributory negligence—as the *O'Morrow* court itself said—but instead "the fundamental principle that '[i]t is contrary to public policy for a person to control both sides of litigation.'" (AB 41, quoting *O'Morrow* at 798.) LAT/Soco omit *why* that was so. In the next sentence, the *O'Morrow* court invoked public policy because "the issues of negligence and contributory negligence cannot be separated." *Id*. The same court (before *Li*) later confirmed that an "insurer lacks an economic motive for a vigorous defense" and so "may not compel the insured to surrender control of the litigation." *Tomerlin v. Canadian Indem. Co.*, 61 Cal.2d 638, 648 (1964), citing *O'Morrow*.

LAT/Soco similarly claim the district court correctly relied on *O'Morrow* because "'[t]here is a large block of authority

recognizing what also seems relatively obvious: when an insurer is obligated to provide defenses for two or more insureds with adverse interests, there is a sufficient conflict of interest that the insurer must provide independent counsel for each insured at its own expense.' " (AB 40, quoting Plitt et al., Couch on Insurance § 202:25 (3d ed. June 2024 update); see Dist. Ct. ECF 99-12.) But this supposed "large block of authority" listed only two California cases: the outmoded decision in *O'Morrow* and *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F. 2d 864 (9th Cir. 1979), which did not address defending both sides of a lawsuit nor purport to cite *O'Morrow* for such a rule.

Nor, as LAT/Soco insist, did the district court correctly find *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal.App.4th 23, 28 (2015), to be part of this "block" and thus a case "agreeing with *O'Morrow's* rule." (AB 41, citing 1-ER-44.) *O'Morrow* is never cited in *Centex*, and the *Centex* passage the district court cited (1-ER-44:9-14) in fact cited Couch's "block of authority" when summarizing the *insured's argument* on appeal that the *Centex* court *rejected*. 237 Cal.App.4th at 28, 33. By misreading *Centex* as following *O'Morrow*, the district court layered error on top of error.

LAT/Soco next claim "*O'Morrow requires* independent counsel 'where the insurer insures both plaintiff and the defendant.'" (AB 42, citing *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal.App.4th 1093, 1101 (2001).) But *James 3 Corp.* mentioned *O'Morrow* in passing only when listing examples of "circumstances that *may* create a conflict," while emphasizing that "not every conflict of interest entitles an insured to insurer-paid independent

23

counsel," *id.* at 1101-1102 (italics added), and affirming a finding of no right to independent counsel.

At bottom, LAT/Soco avoid *O'Morrow*'s rationale because the rationale confirms that *OMorrow's* holding has become academic. In today's comparative-fault world, United lacked incentive to shift liability between LAT/Soco on one hand and the City on the other. The district court's "direct conflict" conclusion premised on *O'Morrow* remains legally untenable and warrants reversal.

### B.    LAT/Soco fail to refute United's proper segregation of claim files.

Even if *O'Morrow* retained vigor, California law holds it immaterial when insurers retain "different law firms to defend [one insured] and the other insured" and "assign[] different claims adjusters" with "no access to each others' files" and do "not discuss the claims." *MBL, Inc.,* 219 Cal.App.4th at 46. So here. United hired different law firms to defend the City and LAT/Soco (3-ER-528 [fact 32]), and "the claims were separated" and "were broken down into four separate claims people"—two coverage, two defense—with segregated files. (3-ER-400.) Even under *O'Morrow,* then, the district court's finding of breach would be error.

In response, LAT/Soco first object that engagement of separate counsel could not obviate *O'Morrow* (if still viable) "because this would not eliminate the issue of the insurance companies controlling both sides of the litigation." (AB 42.) Perhaps not, but *MBL, Inc.* required separate counsel *with separate adjusters*, as occurred here, to satisfy any concern.

Next, LAT/Soco object that, unlike here, in *MBL, Inc.,* there was no actual "evidence of any adversarial litigation activity" between the two insureds. (AB 42-43, citing 219 Cal.App.4th at 46.) They overlook, however, that this point was raised by the insurer in *MBL, Inc.,* as an alternative to the insurer's prior point relying on the absence of "evidence that the defense of either insured would have been affected in any way" because the insurer had "retained different law firms" and "assigned different claims adjusters to the files." *Ibid.* That the *MBL, Inc.,* court agreed with both arguments in no way undermines United's reliance on the first point about file-splitting.

Next, LAT/Soco point to the district court findings that "six months passed after United accepted the City's defense before United finally segregated the [claims] file," and a "single claims handler ... handled the unified file" until then. (AB 43.) But only the City was defended during that six months; when LAT/Soco's defense was accepted six months later, the file was divided and sent to other handlers. (3-ER-400-402.) No insured could have been compromised.

Finally, LAT/Soco complain that, when reassigning the files to four other handlers (two defense, two coverage) the initial handler shared a report from the City's defense counsel with the handler for LAT/Soco's defense, alleging that she "invited" the new handler "to read attorney work product pertaining to" the City's defense. (AB 43.) But LAT/Soco concede that the new handler was told she "can delete from your file anything relating to the defense of the City." (AB 14.) LAT/Soco object that the first handler "did

25

not direct [the LAT/Soco handler] to do so" (*ibid*.) but ignore the uncontradicted evidence that the second handler alerted the first that the report was in the file, the first instructed the second that the report "shouldn't be in the file," and the second confirmed that she would "not read and will delete to keep everything clean." (2-ER-210-211.) United repeatedly explained (AOB 25, 33, 58) that LAT/Soco never impeached or contradicted this evidence, which LAT/Soco themselves adduced.

On this issue of file-segregation, then, this case matches *MBL, Inc.,* where the insured produced "no evidence that the defense of either insured would have been affected in any way" and so failed to show "that the Insurers' representation of other parties in the [underlying] action gave rise to a 'significant, not merely theoretical, actual, not merely potential' conflict of interest." 219 Cal.App.4th at 46 (citation omitted). And LAT/Soco's arguments embody courts' concerns about "overly aggressive insureds' attorneys who 'spend their wits and energies trying to maneuver the insurers…'" into inappropriate conduct. *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal.App.4th 999, 1007 (1998) (citation omitted).

The utter dearth of evidence sufficient to support a finding of improper file segregation compelled United to request entry of judgment for United on LAT/Soco's second and third claims under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986), and *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). (2-ER-324.) This Court should reverse and direct entry of judgment for United on those claims.

26

**C.    LAT/Soco fail to establish any conflict under the *Cumis* rule.**

To evade the outcome-determinative impact of United's proper tender of defense, LAT/Soco alternatively invoke Cal. Civ. Code §2860, which codified *San Diego Navy Fed. Credit Union v Cumis Ins. Society*, 162 Cal App 3d 358 (1984). But they again misstate the rule, claiming that "when a conflict of interest arises, the insured must be given the option to select its own counsel." (AB 39.) The rule applies only to an "insurer's reservation of rights," and "not every reservation of rights entitles an insured to select *Cumis* counsel." *Dynamic Concepts,* 61 Cal.App.4th at 1006 (noting no entitlement where reserved issues are "independent" of those litigated or "where the damages are only partially covered"). Here, United reserved the right to disclaim indemnity to the extent the claimed pollution liability did not result from "sudden" releases, while waiving any reservation as to "accidental" releases. (2-ER-337, 342.) United cited case after case (AOB 59-60) holding that reservations relating "only to the timing of damages" create "no conflict under section 2860." *MBL, Inc,* 219 Cal.App.4th at 47.

On appeal, LAT/Soco offer four theories of conflict.

First, LAT/Soco repeatedly suggest that United reserved as to "accidental" discharges, quoting United's reservation based on "no 'sudden and accidental' releases." (AB 13, 44-45.) But they flagrantly omit the next sentence's express waiver as to "accidental" releases. (See, 3-ER-337, 342 ["we specifically mean

the 'sudden' nature of any alleged releases, not whether any releases were 'accidental.'"].)

Second, LAT/Soco embrace the district court's view (1-ER-26, fn. 1) that United lacked power to waive the "accidental" prong of the exception, claiming that "exclusionary phrases are not to be confined to their component parts" and thus that "[t]he potential application of the "Qualified Pollution Exclusion in full creates the conflict of interest, not the isolated 'sudden' quality of the alleged release." (AB 46 fn. 8.) But the law plainly permitted United to reserve on "sudden" discharges alone because "sudden" and "accidental" are discrete terms with distinct legal meanings. *Shell*, 12 Cal.App.4th at 752-755. Thus, a "release must be both 'sudden and accidental'" to trigger the exclusion's exception. *ACL Technologies,* 17 Cal.App.4th at 1785. United's election to reserve on "sudden" discharges while waiving "accidental" was proper.

Third, LAT/Soco similarly conflate "sudden" with "accidental" by insisting that "the 'sudden' nature of the discharges relates not just to their 'timing,' but to the nature and extent of the alleged *negligence*." (AB 46, italics added.) Thus, they say, the "sudden" pollution is "unexpected" and therefore not "deliberate," so that the two concepts cannot be separated. (AB 45.) But as just discussed, "sudden" and "accidental" are distinct terms. *Shell*, 12 Cal.App.4th at 752-755. LAT/Soco's claim that they are the same misleads.

Fourth, LAT/Soco claim that "the question of whether the discharges were 'sudden'" *really is* "directly at issue in the underlying litigation." (AB 23.) "Whether the commencement of

the discharges was 'sudden' or not," hypothesize LAT/Soco, "may shape conclusions about the amount of contamination and the extent to which third parties other than Plaintiffs exacerbated it." (AB 46.) They speculate that "alternate theories of liability could be offered by the City—one that involves 'sudden and accidental' releases, and one that does not." (AB 47.) This they describe as "as clear a conflict of interest as it gets." (*Ibid.*)

To the contrary, a "mere possibility" of a conflict does not require independent counsel; instead, the "conflict must be significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts,* 61 Cal.App.4th at 1007. Worse, LAT/Soco's speculation makes no sense because "'sudden' refers to the pollution's commencement and does not require that the polluting event terminate quickly or have only a brief duration." *Shell*, 12 Cal.App.4th at 756. The "amount" and "extent" of contamination LAT/Soco caused make no legal difference to coverage.

No decision—aside from the district court's here—has ever found a *Cumis* conflict based on a narrow reservation of rights as to the "sudden" prong of the exception to the pollution exclusion. The district court's unprecedented finding was error.

### D.    LAT/Soco's theory of forfeiture goes nowhere.

LAT/Soco alternatively criticize United's offer to perform because "United forfeited its right to control Plaintiffs' defense when it breached its duty to defend." (AB 24.) That is, they reason, if United incorrectly declined to defend the City's complaint

initially tendered, United was forever barred from stepping in to defend LAT/Soco against a later, different pleading.

In the first instance, of course, this theory goes nowhere because United correctly declined the initial tender.

LAT/Soco are also wrong on the merits. Their theory depends on the routine point that an insurer that wrongfully declines a defense "forfeit[s] … the right to control defense of the action or settlement …." (AB 49, quoting *Intergulf Dev. LLC v. Super. Ct.*, 183 Cal.App.4th 16, 20 (2010).)

*Intergulf*, however, is off point. *Intergulf* addressed whether an insurer sued for breach of the duty to defend was entitled to compel arbitration of defense counsel's fees under Civ. Code §2860(c) without ever having agreed to defend. The court held arbitration premature before a court decides the "preliminary question of duty to defend or disputes over if and when the insurer recognized the insured's right to select independent counsel." 183 Cal.App.4th at 21. The court directed its comment about "forfeiture" only at the insurer's "ability to take advantage of the protections and limitations set forth in section 2860." *Id.* at 20. But United never invoked arbitration under §2860.

Importantly, the *Intergulf* court did not question the rule that an "insurer's duty to defend is a continuing duty that may be assumed *any time before final judgment*." *Tibbs v. Great American Ins. Co.,* 755 F.2d 1370, 1375 (9th Cir. 1985) (italics added), citing *Oil Base, Inc. v. Continental Cas. Co.*, 271 Cal.App.2d 378, 389–90 (1969) (insurer "could have indicated its willingness to appear and defend at any time before trial"), see, *Strougther v. State Farm*

*Fire & Cas. Co.*, 2004 WL 2538776 at *11 (Cal.App. unpubl. 2004) ("the insurer can enter the case against its insured at any time [citing *Oil Base*], rendering the insured's suit against it a nullity").[2]

Nor did the *Intergulf* court address that, "once [the insurer] waived its *Cumis*-triggering defenses …, the disqualifying conflict of interest no longer existed" and the insurer "at any time could appoint counsel of its choice to represent [insured] and [insurer]." *Swanson v. State Farm Gen'l Ins. Co.*, 219 Cal.App.4th 1153, 1164 (2013). Under those circumstances the insurer has no "obligation to allow [the insured] to control the litigation or an obligation to pay the attorneys' fees of [the insured's] *Cumis* counsel" *Id.* at 1160.

Under *Tibbs* and *Swanson*, United was legally entitled to modify its position—even if it had been in breach earlier—by accepting the defense of LAT/Soco upon their tender of the City's second amended complaint and minimizing United's reservation to eliminate any conflict and permit United to appoint attorney Brydon to defend LAT/Soco. United's opening brief quoted *Tibbs* and *Swanson* for these points and, tellingly, the answering brief dared not contest them.

Finally, LAT/Soco do not save their forfeiture theory by quoting from *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal.App.4th 847, 881 (2000), where the court noted

---

[2] Federal courts may treat unpublished state-court decisions as persuasive authority. *Emplrs. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 fn.8 (9th Cir. 2003).

that a "belated offer to pay the costs of defense may mitigate damages but will not cure the initial breach of duty." (AB 49.) Were this Court to disagree with United's decision about the initial tender of the City's first amended complaint, *Shade Foods* would mean only that United would owe defense costs incurred before United accepted defense of the second amended complaint. *Shade Foods* did not address or undermine the principles in *Tibbs* and *Swanson* upon which United relies.

Under these facts—uncontradicted in the record or the answering brief—United's tender of performance of its duty to defend LAT/Soco through attorney Brydon satisfied its contractual duty to defend. (AOB 54, citing Cal.Civ. Code §§1485, 1494.) As a matter of law, no breach occurred. The Court should reverse with directions to enter judgment for United.

### 3. LAT/Soco cannot justify their failure to mitigate damages.

On appeal LAT/Soco do not contest that a breach-of-contract plaintiff must "take reasonable steps to mitigate [its] damages" and so may not "recover for any losses that could have been avoided." *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993); see also *Shade Foods,* 78 Cal.App.4th at 883 (insurance would have "unquestionably mitigated [insured's] damages"). Thus, even when an insurance company breaches its policy, its "insured must make reasonable efforts to mitigate the resulting damages." Croskey *et al.*, ¶12:631.1.

32

LAT/Soco admitted in the district court that, through three policies issued by AIG companies, they had $15 million in excess limits that could have been used for both defense and indemnity. (2-ER-202-203 [facts 35, 39-42].)[3] LAT/Soco tendered to AIG (2-ER-257-260); AIG agreed to defend and indemnify LAT/Soco in full (2-ER-205-206 [facts 49-52]; LAT/Soco rejected the offer and instead elected to pay for defense out of pocket. (2-ER-206-207 [fact 53].)

This undisputed evidence compelled a denial of LAT/Soco's summary-judgment motion, as mitigation of damages presents a question for the trier of fact. *MAG Aerospace Ind., LLC v. Precise Aerospace Mfg., Inc.*, 856 Fed.Appx. 709, 711 (9th Cir. 2021). By instead granting summary judgment to LAT/Soco, and rejecting United's mitigation defense solely because United "owed a ... 'separate and independent'" duty (1-ER-30), the district court erred.

LAT/Soco answer that "any defense provided by AIG would have been temporary because AIG would have stopped defending once the [$15 million] limits of the policy were exhausted." (AB 10.) The point is unserious. They do not contest that the underlying litigation has settled in principle (AOB 26) and that AIG's share of that settlement is but $750,000. (AOB 64, fn.9.)

---

[3] The answering brief suggests that only one of the three AIG policies would have provided defense. (AB 8.) Not so. Granite State had a defense clause; Lexington and National Union expressly incorporated Granite State's terms. (2-ER-202-204 [facts 34-42].)

They contend that "the total amount of defense fees incurred and submitted to United" over the life of the pollution litigation "is $7,647,276.50." (AB 16.) Had LAT/Soco accepted defense from AIG, $6.5 million of AIG $15 million limits would remain; LAT/Soco would have paid nothing and have no damages at all. And an insured cannot claim contract damages for defense costs against a primary insurer where an excess insurer stepped in to defend. *Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal.App.4th 1078, 1089 (2005). LAT/Soco cannot factually dispute that their claimed damages "could have been thus avoided." *Shaffer*, 17 Cal.App.4th at 41.

LAT/Soco next answer that "United cannot avoid its duty to defend … by identifying another insurer" that covered their "defense costs at the expense of [their] overall indemnity coverage." (AB 50.) The question is not, however, whether AIG's offer obviated United's duty, but whether LAT/Soco violated their own duty to mitigate damages by rejecting AIG's offer. Under the rule from *Emerald Bay,* by accepting LAT/Soco would have eliminated their economic loss attributed to United's alleged breach. 130 Cal.App.4th at 1093.

LAT/Soco skirt these points claiming that they are not required "to voluntarily increase [their] *own harms*, simply to reduce the payment that *the breacher owes*." (AOB 50, italics original.) But the "harm" they theorize is that accepting AIG's defense would have "imposed a *larger* cost … by eroding their excess indemnity limits," thereby "justifying [their] denial of the offer." (AOB 52.)

34

The same point was considered and rejected in *Emerald Bay*, where the insured sued its primary insurer for breach even though its excess insurer had fully covered the loss. The insured claimed injury because the excess "policy was 'self-liquidating'"— like AIG's—and only "$6,000,000 remained unexhausted" of the original $11,000,000. 130 Cal.App.4th at 1094. The court rejected the argument because the insured "did not plead or prove it was subject to other third party claims exhausting [the excess] policy limits." *Id.* The same is true of LAT/Soco, who face no other liabilities implicating AIG's policies. Had LAT/Soco accepted AIG's money to defend and pay the underlying claim, they too would still have some $6.5 million in unexhausted excess limits. In just such a setting, the *Emerald Bay* insured lost its lawsuit against its primary insurer because it accepted defense under its eroding-limits excess policy, thereby fully mitigating the insured's damages.

LAT/Soco finally complain that, if the excess insurer in *Emerald Bay* "had a claim against the primary insurer to apportion the costs consistent with the policies' terms, the excess insurer had to bring that suit." (AB 53, citing *Emerald Bay* at 1092.) Perhaps so. But whether AIG won or lost such a suit against United, LAT/Soco would have suffered no damage.

At bottom, an insured suffers no damage when "his representation was undertaken by his other insurance company," *Ceresino v. Fire Ins. Exch.*, 215 Cal.App.3d 814, 823 (1989), even if that defense comes from its excess insurer. *Emerald Bay*. Under *Shaffer*, the insured also must mitigate its damages. LAT/Soco

failed to mitigate their damages and, as a matter of fact and law, the district court erred in granting them summary judgment.

4. **LAT/Soco fail to justify denial of a trial by jury on damages**.

The district court violated the Seventh Amendment by awarding purely equitable relief despite LAT/Soco having sought only legal relief—money damages. LAT/Soco concede in response that the Seventh Amendment "requires legal claims to be tried to a jury first" in a case like this "that involves both legal and equitable claims," but claim the Seventh Amendment is irrelevant because "all of the relief the District Court ordered was equitable." (AB 54.) But that is how the district court erred—purporting to "moot" (1-ER-12) LAT/Soco's legal claim for damages by invoking equitable power it lacked and no one raised. Reversal is required.

Too, the answering brief concedes that the district court's judgment amounted to an injunction. (AB 26, 55-56.) But "equitable relief must be withheld when an equivalent legal claim would have been available…." *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022). Having sued United only for contract damages, LAT/Soco cannot claim they lacked an adequate legal remedy. The district court erred. *Fed. Trade Com'n v. Enforma Natural Products, Inc.*, 362 F.3d 1204 (9th Cir. 2004) (vacating injunction based on inadequate findings).

Finally, LAT/Soco contends it would be difficult for a jury to calculate fees-as-damages. (AB 57-58.) But even under state law, juries decide fees-as-damages. *Brandt v. Superior Ct.*, 37 Cal.3d

813, 820 (1985). In any event, federal law governs, *Simler v. Conner*, 372 U.S. 221, 222 (1963), and requires even complex fees-as-damages to be resolved by juries. *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115-17 (10th Cir. 2009).

Respectfully submitted,

NIELSEN KATIBAH LLP

/s/ James C. Nielsen

Attorneys for Defendant and Appellant
UNITED NATIONAL INSURANCE COMPANY

August 13, 2024

**CERTIFICATE OF COMPLIANCE.**

Per Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned certifies that Appellant's Opening Brief is proportionally spaced, has a type face of 14 points or more, and contains 6,996 words.

/s/ James C. Nielsen

Attorney for Appellant

CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I arranged to electronically file the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ James C. Nielsen

August 13, 2024